**Winfred OVERHOLSER, Superintendent, St. Elizabeths Hospital, Appellant,**

v.

**Robert Stanley RUSSELL, Appellee.**

**No. 15536.**

United States Court of Appeals
District of Columbia Circuit.

June 23, 1960.

Petition for Rehearing En Banc Denied
Sept. 19, 1960.

---

196

Mr. Harry T. Alexander, Asst. U. S. Atty., for appellant. Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., also entered appearances for appellant.

Mr. Hugh J. McGee, Washington, D. C., for appellee. Mr. Leonard L. Leimbach, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, BAZELON and BASTIAN, Circuit Judges.

PER CURIAM.

In October, 1958, Robert Stanley Russell was committed to St. Elizabeths Hospital, a mental institution, under § 24–301(d), D.C.Code (1951, as amended August 9, 1955), after a jury before which he was tried on two criminal charges had found him not guilty by reason of insanity.

By a petition for a writ of habeas corpus filed January 12, 1960, he sought to establish his eligibility for either unconditional or conditional release under § 24–301.[1]

He alleged he suffers from a nervous disorder for which he is being given a mild tranquilizer and psychotherapy, both of which could be administered out-

1. Subsection (g) of § 24–301 is as follows:
   "(g) Nothing herein contained shall preclude a person confined under the au-thority of this section from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus."

side the hospital. He stated he "believes that he has now so recovered from his abnormal mental condition as to be considered of sound mind, competent, and not dangerous to himself or others in the reasonable future and is therefore entitled to his unconditional or conditional release * * *." He also charged the respondent with being arbitrary and capricious in not so certifying. In the Superintendent's return and answer, which was filed January 15, 1960, he denied being arbitrary or capricious, and said he and skilled members of his staff are of the opinion that the petitioner "has not recovered from his abnormal mental condition and is in need of further care and treatment in a mental hospital." The respondent said he was unable to certify "that the petitioner will not * * * be dangerous to himself or others in the reasonable future."

After the hearing on January 25, 1960, the District Court found, inter alia, as follows:

> "9. That petitioner was suffering from a nervous disorder, and as a result of treatment at St. Elizabeth's Hospital is no longer mentally ill.
>
> "10. The Court finds that petitioner will not, in the reasonable future, be dangerous to himself or others, that is, write any checks without sufficient funds. [The only testimony adduced as to the possibility of petitioner being dangerous to himself and to others was to the effect that, if released, petitioner might revert to writing a bad check as he had done in the past.]"

The court concluded "That petitioner is not dangerous to himself nor to others" and "should be unconditionally released from St. Elizabeth's Hospital." Accordingly, an order discharging Russell from custody was entered January 25, 1960, to become effective 24 hours later. Within that time the Superintendent appealed to this court, whereupon we stayed the effectiveness of the District Court judgment pending our further order.

On January 27, 1960, the Superintendent filed with us a motion for summary reversal or stay pending appeal, which included a memorandum in support thereof. An opposing memorandum has been filed and oral argument has been heard.

The question before us is whether the record supports the action of the District Court in granting unconditional release. Section 24–301(e) provides that a person who has been committed to a hospital for the mentally ill because he was acquitted of a criminal offense solely on the ground that he was insane at the time of its commission, may be released unconditionally by the District Court if the superintendent of such hospital certifies (1) that such person has recovered his sanity, (2) that, in the opinion of the superintendent, such person will not in the reasonable future be dangerous to himself or others, and (3) in the opinion of the superintendent, the person is entitled to his unconditional release from the hospital.

█ In order to demonstrate at a habeas corpus hearing that he is eligible for unconditional release, obviously the patient must show that (1) he has recovered his sanity, (2) that he will not in the reasonable future be dangerous to himself or others, and (3) that the superintendent acted arbitrarily and capriciously in refusing to certify him and to recommend his unconditional release.

The petitioner testified in his own behalf at the District Court hearing and introduced several witnesses, including Dr. Miller, a psychiatrist. The latter had seen Russell for less than one hour. He had read the hospital's record of the case, and had noted its diagnosis of "psychoneurotic reaction, obsessive compulsive reaction," but had not discussed the matter with any member of the St. Elizabeths staff. He expressed the view that treatment outside the hospital would suffice; that "he has achieved maximum benefit from his detention there [St. Elizabeths]," and gave it as his opinion that, if Russell were released, he "would present no danger to himself or others."

Dr. Robinson, a psychiatrist on the staff of St. Elizabeths, testified for the respondent. He was familiar with the

history of the case, had observed Russell several times, and in addition had had two or three personal interviews with the patient. His opinion was that Russell needs further treatment in the hospital and that, if released, he would be dangerous to society because of his check-writing proclivity, and dangerous to himself because of the attempts at suicide shown by his history.

We note that both experts recognized the presence of a mental illness; they differed only as to whether he would be dangerous if released. Neither said, nor did any other witness, that Russell has recovered his sanity. We conclude, therefore, that Finding No. 9, that Russell "is no longer mentally ill," is clearly erroneous.

The next question is whether the proof was sufficient to support a holding that Russell is free "from such abnormal mental condition as would make the individual dangerous to himself or the community in the reasonably foreseeable future;"[2] and whether Russell is "dangerous" if he may commit a non-violent crime, or only if he may commit an act of violence. In that connection the District Court found that Russell "will not, in the reasonable future, be dangerous to himself or others, that is, *write any checks without sufficient funds.*" [Emphasis supplied.] This finding is not supported by the evidence and consequently is clearly erroneous. Dr. Robinson said appellant needs further treatment in the hospital and that, if released, he would be dangerous to society because of his check-writing proclivity.

To be sure, Dr. Miller was of the opinion that, if he were released, Russell "would present no danger to himself or to others." But, as his diagnosis showed the continued presence of a mental disease which had been found to be the cause of his writing bad checks, we conclude that Dr. Miller was not saying

Russell was then free of his check-writing proclivity but only that he was not apt to commit an act of violence. We think the danger to the public need not be possible physical violence or a crime of violence. It is enough if there is competent evidence that he may commit any criminal act, for any such act will injure others and will expose the person to arrest, trial and conviction. There is always the additional possible danger—not to be discounted even if remote—that a non-violent criminal act may expose the perpetrator to violent retaliatory acts by the victim of the crime.

The bracketed portion of Finding No. 10 above quoted, which for convenience we repeat in the margin,[3] shows the District Court thought that a released patient would not be dangerous to himself or others if it was not probable that he would commit an act of violence, even though his abnormal mental condition might cause him to commit a non-violent crime.

We hold, therefore, that the District Court erred in granting unconditional release. Its order will be reversed, and the case will be remanded for the consideration and determination of these questions, as to which we express no opinion: (a) whether habeas corpus lies to establish eligibility for conditional release under § 24–301(e); and (b) if so, whether Russell has established eligibility for that relief. Additional evidence should be heard if offered.

Reversed and remanded.

BAZELON, Circuit Judge (concurring in the result only).

I agree that the test governing unconditional release of appellee is settled by Overholser v. Leach, 1958, 103 U.S. App.D.C. 289, 292, 257 F.2d 667, 670, certiorari denied, 1959, 359 U.S. 1013, 79 S.Ct. 1152, 3 L.Ed.2d 1038.[1] That

---

**2.** Overholser v. Leach, 1958, 103 U.S.App. D.C. 289, 292, 257 F.2d 667, 670.

**3.** " * * * [The only testimony adduced as to the possibility of petitioner being dangerous to himself and to others was

to the effect that, if released, petitioner might revert to writing a bad check as he had done in the past.]"

**I.** See also Hough v. United States, where this court said that in Leach "we con-

test, as my brethren say and as we recognized in Hough v. United States, 1959, 106 U.S.App.D.C. 192, 271 F.2d 458, 461, is whether appellee is free "from such abnormal mental condition as would make [him] dangerous to himself or the community in the reasonably foreseeable future." It follows that, if the individual is free from such condition, he may be unconditionally released even though he has not "recovered his sanity."

This is the construction which the court follows in this case, for it reaches consideration of the test laid down in Leach notwithstanding its earlier determination that the record establishes that appellee is still suffering from a mental disease. I think this construction of the statute is also essential to allay constitutional objections against continued confinement of persons initially committed under § 24–301, who are no longer dangerous. Since that section is invoked only in connection with criminal proceedings, its reach must be limited to the purpose of the criminal law. Clearly, the needs of such purpose do not encompass the confinement of those who are not dangerous. Hence, constitutional considerations would require that continued confinement of such persons rests on the laws governing the civil commitment of the insane since they prescribe greater safeguards than those provided in the more summary proceedings under § 24–301. This follows the view expressed by Judge Fahy in his concurring opinion in Ragsdale v. Overholser, 108 U.S. App.D.C. 308, 281 F.2d 943. In all respects I am in full accord with Judge Fahy's opinion concerning the considerations governing the operation of § 24–301.

While I also agree with the court that the burden is on the appellee, I do not agree that it is as heavy as the one which my brethren have drawn from Leach, i. e., the burden of showing that the hospital superintendent acted arbitrarily

and capriciously. Instead, I follow Judge Fahy's view that "until the courts have gained greater experience with problems growing out of section 24–301, I would go no further than to say that on the evidence and in the circumstances as a whole the District Court should be able to reach a sound judgment one way or the other on the question of release." Ragsdale v. Overholser, supra (concurring opinion).

I think the record in the instant case does not allow a sound judgment that appellee is free "from such mental condition as would make him dangerous to himself or the community in the reasonably foreseeable future." I therefore concur in the reversal of the judgment below and the remand with directions to consider the matters relating to conditional release. The test for such release is now settled by our decision in Hough v. United States, supra.

Beyond this, I think we should not go. Certainly there is no basis for this court's comments on the question whether a person who will probably commit non-violent crimes, though not violent ones, may be unconditionally released. That question is not presented by this record.

The court's comments are bottomed on the mistaken assumption that (1) Dr. Miller, in testifying to his opinion that appellee was not dangerous, "was not saying [appellee] was then free of his check-writing proclivity but only that he was not apt to commit an act of violence"; and (2) that "the District Court thought" that only patients who would commit acts of violence were barred from release. I am unable to find, and the court does not cite, any statement by Dr. Miller which, expressly or impliedly, supports the assertion that his testimony rested on the silent premise that passing bad checks was not dangerous because it was not an act of violence. And, clearly, the District Court did not

strued the [unconditional release provisions of D.C.Code, § 24–301(e) (Supp. VIII, 1960)] to require 'freedom from such abnormal mental conditions as

would make the individual dangerous to himself or the community in the reasonably foreseeable future.'" 1959, 106 U.S.App.D.C. 192, 195, 271 F.2d 458, 461.

rely on any such distinction, for it found that:

"\* \* \* petitioner will not, in the reasonable future, be dangerous to himself or to others, *that is, write any checks without sufficient funds.* (The only testimony adduced as to the possibility of petitioner being dangerous to himself and to others was to the effect that, if released, petitioner might revert to writing a bad check as he had done in the past.)" [Emphasis supplied.]

