**Winfred OVERHOLSER, Superintendent, St. Elizabeths Hospital, Appellant,**

v.

**Frederick C. LYNCH, Appellee.**

**No. 15859.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 4, 1960.

Decided Jan. 26, 1961.

---

Fahy, Edgerton, and Bazelon, Circuit Judges, dissented.

Mr. Maurice R. Dunie, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellant.

Mr. Richard Arens, Washington, D. C., with whom Messrs. Lawrence Speiser and James Mitchell Jones, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting in banc.

BASTIAN, Circuit Judge, with whom WILBUR K. MILLER, Chief Judge, and PRETTYMAN, WASHINGTON, DANAHER and BURGER, Circuit Judges, concur.

On November 6, 1959, appellee [defendant in the trial court] came before the Municipal Court for the District of Columbia on informations charging

two violations of the bad check law, § 22–1410, D.C.Code (1951). Pursuant to § 24–301(a), D.C.Code (Supp. VIII, 1960), the trial judge ordered appellee committed to District of Columbia General Hospital for mental observation, and appellee entered that hospital the same day. A report from the hospital was received by the court on December 4, 1959, stating that appellee was at that time incompetent to stand trial. Under the provisions of § 24–301(a), the trial judge ordered that appellee remain at the hospital for treatment. On December 28, 1959, a second report was received from the hospital stating that appellee had improved and was then competent to stand trial. The psychiatrist who wrote the report went on to state that, in his opinion, appellee was a manic-depressive, manic type, and that this disease particularly affects financial judgment. He further stated that, in his opinion, appellee's crimes were the product of this mental disease or defect and that appellee required further treatment to insure against repetition of the offenses. This report was in accordance with our ruling in Winn v. United States, infra.

On December 29, 1959, appellee was brought to trial and was represented by counsel. When his case was called, appellee sought to withdraw the not guilty plea which he had entered earlier and to enter a plea of guilty. The trial judge, having before him the report that appellee was not mentally competent when the acts were committed, refused to allow a change in the plea and proceeded to conduct a trial on the charges. During the course of this trial, the psychiatrist who had examined appellee testified,[1] over objec-tion, as to appellee's mental condition at the time of the commission of the offenses. At the trial, it appears that appellee took the stand and denied essential elements of the crimes with which he was charged. At the conclusion of the case, the trial judge found appellee not guilty by reason of insanity and pursuant to § 24–301(d) D.C.Code (Supp. VIII, 1960), ordered him committed to St. Elizabeths Hospital. No appeal was taken.

On June 13, 1960, appellee filed a petition for a writ of habeas corpus in the District Court, to test the legality of his detention at St. Elizabeths. That court held that the Municipal Court was without jurisdiction to commit appellee in the manner described above and, on June 27, 1960, ordered that he be released unless civil commitment proceedings were instituted within ten days of the date of the order.

At the outset of the case in the Municipal Court, the trial judge was faced with the clear mandate of § 24–301(a), which reads in pertinent part:

"Whenever a person is \* \* \* charged by information \* \* \* with an offense and, prior to the imposition of sentence \* \* \* it shall appear to the court from the court's own observations \* \* \* that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to \* \* \* [a] mental hospital \* \* for [a] reasonable period \* \* \* for examination and observation and for care and treatment if such is necessary \* \* \*. If \* \*

---

1. In Berger v. United States, 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, the Supreme Court said:

"The United States Attorney is representative \* \* \* of a sovereignty \* \* \* whose interest \* \* \* in a criminal prosecution is not that it shall win a case, but *that justice shall be done.* As such he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. \* \* \* \* " [Emphasis supplied.]

We think that the aim "that justice shall be done" applies at least equally to the courts. We therefore agree with the Government that it does not matter whether the psychiatrist was called by the court or by the Government; in either case, he was properly called.

the superintendent of the hospital * * * shall report that in his opinion the accused is of unsound mind or mentally incompetent, *such report shall be sufficient to authorize the court to commit * * * the accused to a hospital for the mentally ill unless the accused or the Government objects,* in which event, the court, after hearing without a jury, shall make a judicial determination of the competency of the accused to stand trial. * * *" [Emphasis supplied.].

This statute is similar to 18 U.S.C. § 4244 (1958); the major difference being that, under the latter section, a judicial determination, after hearing, must always be made, following receipt of the psychiatrist's report. The trial judge thus properly committed appellee to D. C. General Hospital for observation and, after receipt of the December 4 report, for treatment.

When the report of December 28 was received, the trial judge, pursuant to § 24–301(b), properly held that appellee was then competent to stand trial. That section reads in pertinent part:

"Whenever an accused person confined to a hospital for the mentally ill is restored to mental competency in the opinion of the superintendent * * * the superintendent shall certify such fact * * and *such certification shall be sufficient to authorize the court to enter an order thereon adjudicating him to be competent to stand trial,* unless the accused or the Government objects * * *." [Emphasis supplied.]

The trial judge thus, on December 29, found appellee competent to stand trial, in the manner in which he originally found him to be incompetent, both actions being taken pursuant to clear and unambiguous statutory mandates.

We do not quarrel with the operation and effect of § 24–301(a) and (b); indeed, we heartily endorse them. For a defendant who is subjected to trial while mentally incompetent to understand the charges against him and unable to assist in his own defense has not really been tried at all, certainly not in the sense of a "fair" trial, which is the basic element of the due process guaranteed by the Constitution. See the colloquy, at a hearing on S. 850, 80th Cong., 2d Sess. (1948), between Judge Magruder and Senator Wiley, quoted by this court with approval in Gunther v. United States, 1954, 94 U.S.App.D.C. 243, 245, 215 F.2d 493, 495.

Under a section of a statute which is not attacked here, appellee was properly found incompetent to stand trial and committed to a mental hospital. Subsequently, under another section of the same statute, he was found competent to stand trial and counsel was appointed for him. At this point, immediately before his trial was scheduled to begin, appellee sought to withdraw the not guilty plea which had been entered previously and to enter a plea of guilty. The trial judge did not permit the plea to be changed and proceeded to try the case. Rule 9, Mun.Ct.Crim., states:

"A defendant may plead not guilty, guilty * * *. The court *may* refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. * * *" [Emphasis supplied.]

■ This is an exact copy of Fed. R.Crim.P. 11, 18 U.S.C.A. Appellee contends that the "shall not" clause modifies the first clause of this rule, with the net effect that the only circumstance in which a plea of guilty is properly refused is that outlined in the second clause. We do not think this is the case. In Tomlinson v. United States, 68 App. D.C. 106, 93 F.2d 652, 114 A.L.R. 1315, certiorari denied 1937, 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1107, this court said:

"An application by a defendant to change his plea is addressed to the sound discretion of the court,

and the action of the court will not be disturbed, unless there has been an abuse of that discretion." 68 App.D.C. at page 108, 93 F.2d at page 654.

We think the above language is clearly consistent with the Municipal Court's Rule 9. The permissive clause beginning with "may" indicates a general discretion in the court, while the mandatory clause beginning with "shall not" indicates one circumstance where the court has no discretion but must refuse to permit the guilty plea.

We turn now to the issue of whether the trial judge abused his discretion in refusing to permit the guilty plea.

■ Procedure markedly similar to that called for by 18 U.S.C. § 4244 is outlined in § 24–301(a) and (b) of the D.C.Code, and this court has consistently held that an examination conducted under § 4244 to determine a defendant's competency to stand trial must be broad enough to include an inquiry into his mental condition at the time the act in question was committed. Winn v. United States, 1959, 106 U.S.App.D.C. 133, 270 F.2d 326; Calloway v. United States, 1959, 106 U.S.App.D.C. 141, 270 F.2d 334. It would be illogical and inconsistent in the extreme for this court now to hold that the doctrine of Winn and Calloway does not apply to § 24–301 (a) and (b) of the D.C.Code. Therefore, the psychiatrist's reports which were before the Municipal Court properly included evaluation of appellee's mental condition at the time the acts complained of were committed.

■ Perhaps we can not say that at that point the trial judge *knew* that appellee was not guilty of the crimes charged by reason of insanity but we certainly can say that he had every reason, at that point, to believe that there was grave doubt about appellee's criminal culpability and that the issue should be litigated. The preceding statement,

of course, is based on the Davis rule,[2] that insanity is not strictly an affirmative defense and can be raised by either the court or the prosecution.

In Carter v. United States, 1960, 108 U.S.App.D.C. 405, 283 F.2d 200, 203, we considered the converse of the present problem, that is, whether it was error for the trial judge to *fail* to order on his own motion a pre-trial mental examination of the defendant. Holding that that was a matter for the judge's discretion, we went on to say:

> "But the existence of these possibilities [civil commitment and transfer of the prisoner under 18 U. S.C. §§ 4241–4247] does not relieve the *bench and bar of the responsibility of endeavoring to reach at the earliest possible stage—ideally prior to trial and sentence—the approach to a particular case which appears most just and appropriate, having regard to the individual's mental condition, his history, and the possibility of rehabilitating him and restoring him to usefulness in the community."* [Emphasis supplied.]

This statement would seem squarely applicable to the present case. "Just result": It will be shown later that a criminal sentence can in no wise be considered "just treatment" in such a case. "The individual's mental condition": A psychiatrist's report indicating that appellee was a sick man in need of treatment was before the judge. "Rehabilitation" and "restoration to usefulness": These considerations have been prime movers in the development of our present law of criminal insanity; certainly hospitalization was the very thing needed by appellee.[3] Certainly, by all the criteria expressed in Carter, not only was the action here far from an abuse of discretion, but also it would seem affirmatively to have been the best possible decision, if not the only just one.

---

**2.** Davis v. United Stataes, 1895, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499.

**3.** At the present time, appellee has responded to treatment and has been conditionally released.

In Holloway v. United States, 1945, 80 U.S.App.D.C. 3, 4–5, 148 F.2d 665, 666, this court said: "Our collective conscience does not allow punishment where it cannot impose blame." In Douglas v. United States, 1956, 99 U.S.App.D.C. 232, 239 F.2d 52, we clearly pointed to the distinction between punishment for criminal conduct and treatment for mental disease, and we indicated our awareness of the necessity for determining which of the two procedures is appropriate for a particular case.

"That one who commits a wrong by reason of insanity must be acquitted is so well-settled that no one questions it * * *. *Only the guilty are to be punished. For the merely dangerous, society provides other treatment.*" [Emphasis supplied.] Blunt v. United States, 1957, 100 U.S.App.D.C. 266, 278, 244 F.2d 355, 367.

In Williams v. United States, 1957, 102 U.S.App.D.C. 51, 57–58, 250 F.2d 19, 25–26, we clearly stated that imprisonment was *wrong* in the case of a mentally ill person, as well as a remedy which could not possibly secure the community against repetition of the offense. "Under our criminal jurisprudence, mentally responsible law breakers are sent to prison; those who are not mentally responsible are sent to hospitals. * * * It is both wrong and foolish to punish where there is no blame * * *. The community's security may be better protected by hospitalization * * * than by imprisonment."

■■■ The cases above cited establish almost a positive duty on the part of the trial judge not to impose a criminal sentence on a mentally ill person. In this case appellee had never before been convicted of a criminal offense and had previously served honorably as a commissioned officer in the armed forces. We suggest it would have been a plain abuse of discretion for the trial judge, in these circumstances, to allow a plea by which society would brand such a person with a criminal record. Appellee argues that the plea of guilty had been carefully considered by competent counsel and by appellee, who had been judicially declared competent to stand trial and to assist in his own defense. We think that, for the reasons stated above, this decision was one which appellee and his counsel did not have an absolute right to make. We might add that the foregoing reasoning omits consideration of Clark v. United States, 1958, 104 U.S. App.D.C. 27, 259 F.2d 184, and Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612 where we held that trial counsel had no right to concede his client's sanity; and Plummer v. United States, 1958, 104 U.S.App.D.C. 211, 260 F.2d 729, where we held, in effect, that failure of trial counsel to raise the defense of insanity was ineffective assistance of counsel under 28 U.S.C. § 2255. Appellee's argument on this point impliedly calls for reversal of Plummer, if not Tatum and Clark as well. This we are unwilling to do. Society has a stake in seeing to it that a defendant who needs hospital care does not go to prison.

In the light of the previous discussion in this opinion, we are convinced that criminal insanity is a matter of grave public concern, particularly with respect to the problem of rehabilitation. Once it is established that the defendant did in fact commit the act charged but that he was insane at the time, then the problem is one of rehabilitation. In this context, the only issue is whether the defendant will go to jail for punishment or to a hospital for treatment. In either event he will be confined, deprived of his absolute liberty.

By its very nature, a jail sentence is for a specified period of time, while, by its very nature, hospitalization, to be effective, must be initially for an indeterminate period. This difference is not fatal because of the overriding interest of the community in protecting itself and its interest in rehabilitating the defendant himself. Certainly a man is not truly free if he has a sickness which results in his continual criminal activity, which, in turn, leads to a life-time in

jail, with only short breaks between sentences. In the case before us, had Lynch not been treated, he might have been in and out of jail for the rest of his life on bad check charges. Now that he has received treatment, he is well on the way to unconditional release, without the probability of repeat offenses.

Therefore, once it is determined that a defendant is to be hospitalized for treatment of a mental disease or defect, further consideration of the criminal penalty provided by statute becomes irrelevant, for any and all purposes. The length of his hospitalization must depend solely on his need (or lack of it) for further treatment. It is true that he may be hospitalized for a longer time than the maximum jail sentence provided by statute. It is equally true that he may be released in a shorter time than the minimum sentence. Hospitalization, in this respect, bears no relation to a jail sentence. A jail sentence is punitive and is to be imposed by the judge within the limits set by the legislature. Hospitalization is remedial and its limits are determined by the condition to be treated. As we said in O'Beirne v. Overholser, 1960, —— U.S. App.D.C. ——, 287 F.2d 133:

> "[A person committed to St. Elizabeth's under § 24–301 after a verdict of not guilty by reason of insanity] is not a 'prisoner'; he is not under 'sentence.' * * * He is an 'accused person confined to a hospital for the mentally ill,' to quote the words of the statute."

In Overholser v. Russell, 1960, 108 U.S.App.D.C. 400, 283 F.2d 195, we said that mandatory commitment under § 24–301(d) was proper even in the case of non-violent crimes (coincidentally, bad check charges) because, even in the case of non-violent crimes, society has a great interest in protecting itself.

 Once a man has been committed to a hospital under § 24–301(d), we do not think, as did the District Judge, that the Government should thereafter be forced to prove his insanity as the price of continuing treatment. The remedy afforded by habeas corpus under present well settled law permits a person so confined to obtain his release through the courts by establishing that he has met the tests for such relief laid down in the governing statute.[4]

 A number of factual questions have been raised by counsel in brief and in argument as to what actually occurred in the trial court. Unfortunately no reporter was present at the Municipal Court proceedings, but this does not in any way affect the jurisdiction of the Municipal Court to take the action challenged. A presumption of regularity attaches to the proceedings of a trial court in the absence of an appeal, and we are bound by that presumption, unless and until a showing has been made that the judgment is so defective as to be subject to collateral attack, under the rules applicable in *habeas corpus*. See O'Beirne v. Overholser, supra. No such showing has been made here.

We hold that the Municipal Court's action was correct as to all the points properly raised by the *habeas corpus* proceeding, and therefore the order of the District Court is

Reversed.

FAHY, Circuit Judge, with whom EDGERTON and BAZELON, Circuit Judges, join, dissenting.

Frederick C. Lynch, appellee, petitioned the District Court for a writ of habeas corpus to obtain his release from restraint at St. Elizabeths Hospital. Appellant, the Superintendent of the Hospital, interposed as legal basis for the restraint an order of the Municipal Court of the District of Columbia of December 29, 1959, committing appellee to the Hospital pursuant to the provisions of 24 D.C.Code, § 301(d), as amended, "after having been found not guilty

---

4. Cf. Hill v. United States, 6 Cir., 206 F.2d 204, 207, certiorari denied 1953, 346 U.S. 859, 74 S.Ct. 75, 98 L.Ed. 372.

by reason of insanity on charges of Passing Bad Checks." The charges were misdemeanors involving two checks of $50 each cashed in October 1959.

As a result of the District Court proceedings Judge McGarraghy concluded that the Municipal Court lacked jurisdiction to "permit the government to obtain commitment of the petitioner as of unsound mind by use of a criminal proceeding in substitution for civil commitment procedures established by law." He held that petitioner, therefore, was illegally detained at the Hospital and concluded as follows:

"[T]hat the writ of habeas corpus shall issue and the petitioner be restored to his liberty unless within ten days from the date of this Order, or such extension thereof as may be granted by this Court for good cause shown, civil proceedings for the commitment of the petitioner shall be instituted, in which event the petitioner shall remain in the custody of the respondent until final determination of said civil proceedings."

I agree with Judge McGarraghy as to the invalidity of the commitment, and in the solution he reached above set forth. Both the public and the private interests are protected by the course he directs: the individual concerned is held no longer by virtue of the invalid trial, and the public as well as the private interests are protected by conditioning the individual's release upon the outcome of future proceedings under our Code, 21 D.C.Code § 306 (1951), for the commitment of persons of unsound mind.

The reasons I think the Municipal Court commitment was invalid are first stated. As the result of pretrial proceedings appellee was found competent to stand trial. He was represented by counsel. When the cases were called for trial he sought to plead guilty, choosing to accept what punishment might be imposed for the two misdemeanors. The court refused to permit the guilty pleas, obviously believing there was a substantial question whether appellee was of sound mind when the checks were cashed. Thus a serious question arose involving the right of a person accused of a misdemeanor, who is competent to plead guilty and is represented by counsel, not to be compelled by the court to enter a plea of not guilty. I do not find it necessary to resolve this most difficult question, because even if it be assumed that the Municipal Court could compel this, and validly did so in this case, nevertheless I think the commitment which eventuated from the trial was invalid for other reasons.

Upon refusing the guilty plea the court then brought on the charges for trial over appellee's objection. We have no transcript of what occurred, and so we cannot accurately reconstruct the events. In this respect the case resembles O'Beirne v. Overholser, —— U.S.App.D. C. ——, 287 F.2d 133. As we could not say there, so we cannot say here, that a fair trial was held in the Municipal Court, with opportunity for appellee to meet the government's case. As near as we can make out from the data we have, the case was turned into an inquiry concerning appellee's sanity at the time the checks were cashed. The evidence consisted of the testimony of a psychiatrist that appellee was of unsound mind at that time. Appellee and his counsel were thus confronted with a serious situation affecting appellee, and the record does not show they were given a reasonable opportunity to cope with it by showing appellee was not of unsound mind when the checks were cashed. In the absence of that opportunity, there could be no valid finding that he was not guilty by reason of insanity. Such data as is before us supports the finding of Judge McGarraghy that the Municipal Court proceeding was not a valid trial but an invalid commitment proceeding. In the absence of a valid trial and acquittal by reason of insanity, there could be no valid commitment to St. Elizabeths under section 24–301(d).

In O'Beirne we remanded for a District Court hearing and findings respecting the fairness of the Municipal Court

trial. But the preferable remedy, especially where, as here, more than a year has passed in which the petitioner has been in restraint, is not to order a second District Court hearing about what occurred at the Municipal Court trial, as we did in O'Beirne, but to set aside the commitment.

I, of course, agree with the majority that a person of unsound mind who is charged with crime is not to be sent to prison if the alleged crime was due to his unsoundness of mind. Instead, he should be treated for his condition. See the Holloway, Douglas, Blunt and Williams decisions referred to in the majority opinion. And I readily agree also that criminal insanity is a matter of grave public concern, particularly with respect to the problem of rehabilitation. But these sound general principles are not dispositive of the particular problem raised by the continued restraint imposed upon Lieutenant Colonel Lynch.

In his petition for the writ of habeas corpus appellee does not allege present soundness of mind. He attacks his detention solely on the ground of the invalidity of his commitment.[1] As already stated, I agree with Judge McGarraghy that unless civil proceedings for appellee's commitment are now undertaken, he is entitled to be released on that ground. Moreover, if the judgment of Judge McGarraghy is sustainable upon a ground independent of the one asserted by appellee, it should be affirmed. I think such independent ground does appear and that it deprives the issue of the validity of the Municipal Court proceedings of critical significance. Even if the Municipal Court trial were in all respects valid, followed by a valid mandatory commitment under section 301 (d), appellee's detention would no longer be sustainable on the basis of that commitment.

Section 301(d)—the mandatory commitment provision—and section 301(e)

—governing subsequent release—are part of a general plan and are to be read in relationship of one with the other. It is plain that Congress was concerned that an accused person might escape prison by reason of his defense of insanity and be immediately released upon the community, although he had engaged in dangerous conduct. This is what Congress sought to prevent. There is no reason to suppose Congress intended that a person not accused of any dangerous offense and not found to be of unsound mind should be held indefinitely against his will in a mental institution because believed to be a person of bad character; that is, Congress was not establishing a system of "protective" or "preventive" custody of persons neither dangerous nor found to be of unsound mind.

An important factor to be remembered in interpreting the valid scope of section 301(e) is that an acquittal by reason of insanity, which leads to commitment under section 301(d), is not an adjudication of insanity. It is well settled that such acquittal means only that sanity has not been established beyond a reasonable doubt. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499; Isaac v. United States, 109 U.S.App. D.C. ——, 284 F.2d 168; Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608; Douglas v. United States, 99 U.S. App.D.C. 232, 239 F.2d 52.[2] One in appellee's position not only has not been charged with a dangerous offense, but has not been adjudged to be of unsound mind.

The dangerousness referred to in section 301(e), upon which continued restraint is conditioned, as I suggested in my concurring opinion in Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 314, 281 F.2d 943, 949, and see Judge Bazelon's concurring opinion in Overholser v. Russell, 108 U.S.App.D.C. 400, 403, 283 F.2d 195, 198, is related to conduct com-

---

1. See Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

2. And see generally Halleck, The Insanity Defense in the District of Columbia, 49 Georgetown L.J. 294 (1960).

parable to the offense charged.[3] The offenses charged to appellee, the cashing of two "bad checks" of $50 each, were not of a dangerous character within the meaning of section 301(e). Therefore the release conditions of that section do not apply in appellee's case and his continued restraint cannot be justified under the criteria of that section. It is not of significance one way or the other that these criteria [4] are to be read through the gloss of applicable decisions of this court.[5]

Whichever criteria are followed it remains true, I think, that Congress in section 301(e) is not concerned with persons who have engaged in any kind of unlawful conduct, however minor, but only with persons who have engaged in unlawful conduct of a dangerous character. The language used conveys the idea of physical danger to persons and, perhaps, to property. I do not attempt to delineate precisely the boundaries fixed by the language used, but obviously they do not encompass any and every minor conflict with the law of which a person has been acquitted because of a doubt about his sanity. Had Congress intended such a broad coverage, it would have used broader language such as "likely to engage in unlawful conduct," rather than the narrow language of section 301(e), "dangerous to himself or others."

Our jurisprudence knows no such thing in times of peace as "preventive" or "protective" custody of persons not guilty of crime and not found to be of unsound mind. Congress, of course, was aware of this and did not cloud its enactment with grave constitutional doubts by requiring a person of sound mind to be held under restraint in a mental institution on the theory he had done an act having the elements of a minor and non-dangerous offense.[6] The most serious constitutional doubts are avoided by giving the provisions of section 301(e) their natural meaning which excludes non-dangerous conduct. It follows that valid restraint of appellee depends upon a finding, never yet made, that he is of unsound mind [7] and not upon meeting the conditions for release applicable to persons committed under

3. See also Goldstein & Katz, Dangerousness and Mental Illness, 70 Yale L.J. 225, 235 (1960).

4. For unconditional release.

5. In Overholser v. Leach, 103 U.S.App. D.C. 289, 292, 257 F.2d 667, 670, it is said the person must be free from "such abnormal mental condition as would make the individual dangerous to himself or the community in the reasonably foreseeable future." This was approved in Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943. In Overholser v. Russell, 108 U.S.App.D.C. 400, 283 F.2d 195, it is said the person must show (1) that he has recovered his sanity; (2) that he will not in the reasonable future be dangerous to himself or others; and (3) that the Superintendent acted arbitrarily and capriciously in refusing so to certify and to recommend unconditional release. See, however, Judge Bazelon's concurring opinion pointing out that since the issues of violence and non-violence were not presented by the record, the court's comments are dicta. Proof of arbitrariness and capriciousness is required also by Leach, and no less is required by Ragsdale.

6. There was no finding of insanity such as underlay the assumption on which Orencia v. Overholser, 82 U.S.App.D.C. 285, 163 F.2d 763, was decided by this court.

7. The contrast of section 301(e) with the federal statutory provisions concerning continued detention of federal prisoners as set forth in 18 U.S.C. §§ 4247–4248 (1958) has some significance. If upon a hearing the court for the district in which the prisoner is confined shall determine that the prisoner is insane or mentally incompetent, and that if released he will probably endanger the safety of the officers, the property, or other interests of the United States, the detention of the prisoner is authorized. Such commitment, however, shall terminate when the sanity or mental competency of the person is restored or when the mental condition of the person is so improved that if he be released he will not endanger the safety of the officers, the property, or other interests of the United States; that is, he is to be released if sane or mentally competent. (Emphasis added.)

section 301(d). On the issue of his present soundness of mind, appellee's prior conduct, as well as his present condition, may of course, be considered insofar as relevant.[8]

I would affirm the judgment of the District Court.

8. No doubt a hearing and determination on the question of appellee's present soundness of mind could be had in the habeas corpus proceedings. See Stewart v. Overholser, 87 U.S.App.D.C. 402, 186

F.2d 339. But appellee does not appeal from the disposition directed by Judge McGarraghy, which calls for the civil commitment procedures of the Code.