Dr. Dale C. CAMERON, Appellant,

v.

William V. FISHER, Appellee.

No. 17364.

United States Court of Appeals District of Columbia Circuit.

Argued May 6, 1963.

Decided June 13, 1963.

Mr. Paul A. Renne, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, Oscar Altshuler and Daniel J. McTague, Asst. U. S. Attys., were on the brief, for appellant.

Mr. William R. Durland, Washington, D. C. (appointed by the District Court) with whom Mr. Richard D. Capparella was on the brief, for appellee.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

Appellee on May 1, 1961, pled guilty to an information filed in the Criminal Division of the Municipal Court of the District of Columbia, now the District of Columbia Court of General Sessions. He was charged with making unlawful threats of personal violence, in violation of 22 D.C.Code § 507. The plea was withdrawn the same day it was entered. At the request of his counsel the court committed appellee to the D. C. General Hospital pursuant to 24 D.C.Code § 301 (a) for examination to determine his competency to stand trial.[1] In due course an Assistant Chief Psychiatrist of the Hospital reported to the court that appellee was of unsound mind, unable to understand the charges against him and incapable of assisting counsel in his own defense. Thereafter, within the month,

---

1. 24 D.C.Code § 301(a) is as follows:

"(a) Whenever a person is arrested, indicted, charged by information, or is charged in the juvenile court of the District of Columbia, for or with an offense and, prior to the imposition of sentence or prior to the expiration of any period of probation, it shall appear to the court from the court's own observations, or from prima facie evidence submitted to the court, that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the court may order the accused committed to the District of Columbia General Hospital or other mental hospital designated by the court, for such reasonable period as the court may determine for examination and observation and for care and treatment if such is necessary by the psychiatric staff of said hospital. If, after such examination and observation, the superintendent of the hospital, in the case of a mental hospital, or the chief psychiatrist of the District of Columbia General Hospital, in the case of District of Columbia General Hospital, shall report that in his opinion the accused is of unsound mind or mentally incompetent, such report shall be sufficient to authorize the court to commit by order the accused to a hospital for the mentally ill unless the accused or the Government objects, in which event, the court, after hearing without a jury, shall make a judicial determination of the competency of the accused to stand trial. If the court shall find the accused to be then of unsound mind or mentally incompetent to stand trial, the court shall order the accused confined to a hospital for the mentally ill."

another Assistant Chief Psychiatrist of the Hospital reported to the court that appellee was presently of sound mind, able to understand the charges against him and capable of participating in his own defense. Thereupon he was returned to the jail to stand trial on the information. He sought to plead guilty but the court refused to permit him to do so. He was tried by the court June 2, 1961. At the trial over his counsel's objection testimony as to his sanity was introduced. The court found appellee not guilty by reason of insanity, whereupon he was committed to St. Elizabeths Hospital pursuant to 24 D.C.Code § 301(d).[2]

On May 21, 1962, the Supreme Court, in Lynch v. Overholser, 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211, held that such a commitment under Section 301(d), ordinarily mandatory when there is an acquital by reason of insanity, was not proper in a case such as this, where the accused had not defended on the ground of insanity but, on the contrary, sought to plead guilty, claiming to be of sound mind.

Since appellee was confined to St. Elizabeths in a manner held invalid in Lynch he petitioned the District Court for writ of habeas corpus June 14, 1962. The court agreed that the commitment and consequent detention by appellant, the Superintendent of the Hospital, were illegal and ordered appellee's release, staying execution of its order for three days. During the three-day period the United States filed a motion in the Criminal Division of the Municipal Court for a hearing under Section 301(a) with respect to appellee's mental condition. Appellee objected to such a hearing. His motion for appointment at the Government's expense of a private psychiatrist to assist him was denied. Nevertheless the hearing was held, each side made argument, and psychiatric testimony as to appellee's condition was received on behalf of the Government. The Municipal Court found that appellee "has not recovered his sanity, and that if he is released he will be dangerous to himself and others." He was again ordered committed to St. Elizabeths, this time under the provisions of Section 301(a). On July 16, 1962, however, the District Court, as we have said, ordered his release in the habeas corpus proceeding, ruling that the Municipal Court was without jurisdiction when it committed appellee to St. Elizabeths Hospital pursuant to Section 301(a). The District Court in its opinion stated:

> "Since there was no pending criminal proceeding, the Municipal Court was lacking jurisdiction to commit this petitioner to St. Elizabeths Hospital pursuant to Section 24–301(a) of the District of Columbia Code."

The court pointed out that if the defendant were insane, "civil proceedings may be instituted for his commitment as a civil patient," adding that government counsel stated that they were advised by psychiatrists that Fisher is not so mentally ill that he would be subject to such commitment. We bear in mind that the acquittal of appellant by reason of insanity was not an adjudication that he was insane at the time of the commission of the offense.[3] As stated in Lynch,

> "In the District of Columbia, as in all federal courts, an accused 'is entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime.' Davis v. United States, 160 U.S. 469, 484 [16 S.Ct. 353, 40 L.Ed. 499]. See, e. g., Isaac v. United States, 109 U.S.App.D.C. 34, 284 F.2d 168. Compare Leland v.

2. 24 D.C.Code § 301(d) is as follows:
   "(d) If any person tried upon an indictment or information for an offense, or tried in the juvenile court of the District of Columbia for an offense, is acquitted solely on the ground that he was insane at the time of its commission, the court shall order such person to be confined in a hospital for the mentally ill."

3. Nor is such an acquittal an adjudication of unsoundness of mind as of any other time.

Oregon, 343 U.S. 790 [72 S.Ct. 1002, 96 L.Ed. 1302]. Consequently, the trial judge or jury must reach a judgment or verdict of not guilty by reason of insanity even if the evidence as to mental responsibility at the time the offense was committed raises no more than a reasonable doubt of sanity." 369 U.S. at 713, 82 S.Ct. at 1069.

■ We agree with the District Court that the Municipal Court, at the time of its order committing appellee to St. Elizabeths pursuant to a hearing under Section 301(a), was without jurisdiction of the case for the purpose of such commitment. See Williams v. Overholzer, 104 U.S.App.D.C. 18, 259 F.2d 175 (1958).

The appellant Superintendent, on the basis of language in the Supreme Court opinion in the Lynch case, decided subsequent to Williams, urges to the contrary. The actual holding of the Court in Lynch, however, was not with respect to Section 301(a). As we have indicated the holding was that the mandatory commitment requirement of Section 301(d) does not apply to a person acquitted on the ground of insanity when he had not raised the insanity defense but sought to plead guilty. To hold otherwise, the Court said, would be "out of harmony with the awareness that Congress has otherwise shown for safeguarding those suspected of mental incapacity against improvident confinement," referring to 21 D.C.Code § 310, where "[t]he burden of proof is on the party seeking commitment * *." 369 U.S. at 711, 82 S.Ct. at 1068. In addition to this civil commitment procedure, however, the Court referred to the availability of Section 301(a), utilized by the Municipal Court in the present case. This reference to Section 301(a), along with civil commitment, as means for securing adjudication of unsoundness of mind, when a commitment under the mandatory provisions of Section 301(d) is not proper in such cases as this and Lynch, was not a holding that Section 301(a) was available after the criminal charge which brought the person into court had been entirely disposed of. The Court referred to Section 301(a) in connection with the "pretrial commitment" of an accused antedating a finding of guilt.[4] It is in this light that we read the Court's further statement that since the inquiry under Section 301(a) "may be undertaken at any time 'prior to the imposition of sentence,' it appears to be as available after the jury returns a verdict of not guilty by reason of insanity as before trial." 369 U.S. at 719, 82 S.Ct. at 1072. But surely the time available after verdict of not guilty by reason of insanity, within which it was thus thought a commitment under Section 301 (a) for unsoundness of mind might be made, was not intended by the Court to be extended beyond the time the criminal charge is decided and the question of custody incident to the disposition of the charge is determined.

The criminal charge against appellee had been disposed of June 2, 1961. Nothing was pending against him in the Municipal Court in June, 1962, when he initiated the habeas corpus proceeding. The charge in the Municipal Court had resulted in an acquittal by reason of insanity. Appellee had been confined to St. Elizabeths under the mandatory requirements of Section 301(d), mistakenly thought to be applicable. Under Lynch this confinement was illegal, but this did not serve to permit the Municipal Court to reopen the criminal proceedings, long since ended, for a Section 301(a) hearing.

Although we assume arguendo, but without deciding, that by reason of the Court's observations regarding Section

---

4. Thus:

"* * * § 24–301(a) would *prohibit* pretrial commitment upon the suggestion of the Government and over the objection of the accused, although the record contained an affirmative medical finding of present insanity, unless the Government is able to prove, by a preponderance of the evidence, that the accused is presently of unsound mind." 369 U.S. at 714, 82 S.Ct. at 1069 [emphasis in the original].

301(a) in its Lynch opinion appellee could have been brought within the procedures of that section at the time he was tried in the Municipal Court, and before that court decided the issue of his custody in disposing of the criminal charge, this was not done. The fact is the jurisdiction of the Municipal Court to act under Section 301(a) ended a year before the habeas corpus proceeding in the District Court, now before us, was initiated.

In Williams we held that Section 301(a) was available only to determine the issue of competency to stand trial. We need not decide now whether or not Lynch extends the availability of Section 301(a) beyond the limitations of Williams, for in any event Lynch does not extend such availability beyond the end of the criminal case. Assuming arguendo that Williams is not in all respects consistent with Lynch, neither of those decisions is consistent with appellant's position that 301(a) is available long after final disposition of the criminal charge itself.[5]

Affirmed.

DANAHER, Circuit Judge (concurring).

In Williams v. Overholser [1] where Williams had pleaded guilty to a misdemeanor charge, we pointed to the availability of the provisions of D.C.Code § 21–306 (1961) et seq. as one basis for commitment proceedings, holding that otherwise § 24–301 authorized confinement only upon a determination that an accused is mentally incompetent to stand trial.

Three years later after further consideration, this court sitting *en banc* decided

Overholser v. Lynch [2] on January 26, 1961. The majority thought a trial judge, possessed of reasonable doubt as to the sanity of the accused *at the time of the offense,* should not accept a plea of guilty even though its consequences had been carefully considered by an able attorney and by the accused who had been judicially determined competent to stand trial and to assist in his own defense. Thus six judges concluded that an accused found not guilty by reason of insanity could be confined to a hospital for the mentally ill as § 24–301(d) provides. On June 2, 1961, this course was followed as to Fisher.

The Supreme Court reversed in Lynch v. Overholser,[3] saying that a trial judge may refuse to accept a guilty plea and enter a plea of not guilty. "We decide in this case only that if this is done and the defendant, despite his own assertions of sanity, is found not guilty by reason of insanity, § 24–301(d) does not apply."[4] Thus commitment could not be based upon § 24–301(d) unless the accused himself raised the defense that he was insane at the time of the commission of the offense.

But, if he did not so plead, but was found not guilty by reason of insanity, the Court went on to say: "If commitment is *then* considered warranted, it must be accomplished" [5] in either of two ways, one being resort to section 24–301(a).[6] The Court had already noted that two different types of inquiry were set forth in § 24–301(a). "This inquiry, therefore, is not limited to the accused's competence to stand trial; *the judge may consider, as well, whether the accused is*

---

5. We note that the remand by the Supreme Court in Lynch does not indicate that 301(a) was available in that case after the remand, assuming it had been available to the Municipal Court when Lynch was before that court. The Supreme Court remanded the case to the District Court in the habeas corpus proceedings, not to the Municipal Court.

1. 104 U.S.App.D.C. 18, 259 F.2d 175 (1958).

2. 109 U.S.App.D.C. 404, 288 F.2d 388 (1961).

3. 369 U.S. 705, 82 S.Ct. 1063 (1962).

4. 369 U.S. at 719–720, 82 S.Ct. at 1072.

5. 369 U.S. at 720, 82 S.Ct. at 1072.

6. Ibid., the other being recourse to the civil commitment proceedings discussed in our Williams case, supra note 1.

*presently committable as a person of unsound mind."* [7] (Emphasis added.)

Recognizing a distinction [8] between mental "competence" and "unsound mind" the Supreme Court must mean, as I see it, that § 24–301(a) is available only in limited situations where the condition of "unsound mind" is a factor. For example, if after examination the accused shall have been found competent to stand trial and after trial, the jury brings in a verdict of *guilty* as charged, but the judge is satisfied nevertheless that at the time of trial or before sentence,[9] the accused is *presently* of unsound mind, a further inquiry is authorized and may be undertaken. If the accused is thereupon found to be of unsound mind, he may be committed until he shall be found competent. Only then may he be sentenced, with an understanding of the position in which he then stands. He must be able to assist, competent, in short, to make personal allocution if he shall choose to do so.[10]

In this case, Fisher was first committed on June 2, 1961 as the order recited "pursuant to Public Law 313, 84th Congress, Chapter 673, 1st Session." But he was not committed simply until his mental competence might be restored, for he was found not guilty on the ground that he was insane at the time of the offense.

That judgment precluded the 1962 hearing, it develops, because of the Supreme Court's ruling in Lynch v. Overholser, supra.

If in June, 1961, the trial judge upon receipt of the psychiatric report [11] had found that Fisher was mentally competent, he could have accepted Fisher's plea of guilty. The trial judge then could have sentenced Fisher to jail. The Supreme Court tells us that under D.C. Code § 24–302, "if an accused who pleads guilty is found to be in need of psychiatric assistance, he may be transferred to a hospital following sentence."[12]

That the Municipal Court in June, 1961, followed the course we set out in Overholser v. Lynch, supra, is clear. That Fisher one year later was lawfully released by the District Court [13] after the Supreme Court had spoken is obvious, and we must affirm. In argument it developed that Fisher's release within a few months has led only to his further indictment. Charged now in three counts with arson, the burning of his wife's clothing, and setting fire to his dwelling, the District Court's records reveal that, as in 1961, he has again been found competent to stand trial—and yet as of the date of the offenses, December, 1962, to have been suffering from an "emotionally unstable personality." [14]

---

7. 369 U.S. 719, 82 S.Ct. at 1072.

8. See Lyles v. United States, 103 U.S.App. D.C. 22, 26, 254 F.2d 725, 729 (1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958), as to the distinction between persistent mental disease and competency to stand trial; id., dissenting opinion, 103 U.S.App.D.C. at 31–32, 254 F.2d at 734–735.

9. Or even after sentencing if the situation develops "prior to the expiration of any period of probation," § 24–301(a).

10. Fed.R.Crim.P. 32(a); Gadsden v. United States, 96 U.S.App.D.C. 162, 167, 223 F.2d 627, 632 (1955); Couch v. United States, 98 U.S.App.D.C. 292, 235 F.2d 519 (1956); cf. Green v. United States, 365 U.S. 301, 81 S.Ct. 653 (1961).

11. On May 26, 1961, Dr. Gordon reported that Fisher was "presently of sound mind, able to understand the charges against him, and capable of participating in his own defense."

12. Lynch v. Overholser, supra, 369 U.S. at 718, 82 S.Ct. at 1071.

13. Only a few days earlier, the Municipal Court in July, 1962, heard testimony in proceedings which, it develops, were invalid. Dr. Robertson testified that Fisher was still suffering a mental illness and "would be dangerous to others if he was released to the stress of living outside of the hospital, dangerous to others."

14. Classified by some psychiatrists as a mental disease; St. Elizabeths staff has advised the District Court no "valid opinion" can be formed as to whether or not the alleged criminal offenses were the product of his mental disease.

Perhaps he will again plead guilty. If so, the guidance of the Supreme Court as to the applicability of § 24–302 may point the way to his ultimate rehabilitation.[15]

15. Cf. Carter v. United States, 103 U.S.App.D.C. 405, 408, 283 F.2d 200, 203 (1960).