Clayton E. GADSDEN, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 12100 and 12101.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 28, 1955.

Decided April 21, 1955.

---

Mr. Al Philip Kane, Washington, D. C. (appointed by this court), for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S.

Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant pleaded not guilty to three indictments for robbery.[1] After the jury returned a guilty verdict on the earliest numbered indictment (No. 759), he withdrew his pleas of not guilty on the two remaining indictments (Nos. 760 and 761) and entered pleas of guilty. An application for leave to appeal in forma pauperis from all three judgments was denied by the District Court. A similar application filed in this court was granted as to the two cases in which appellant pleaded guilty, but not as to No. 759 upon which he had gone to trial. In the interests of justice, we have now reviewed all three cases.[2] Although we find no prejudicial error in appellant's trial on No. 759,[3] substantial errors committed at the time of sentencing require a remand for resentencing in all three cases.

On the morning of the day set for sentencing in all three cases, Mrs. Dwyer, court-appointed counsel, " * * * vis-

---

1. 22 D.C.Code § 2901 (1951).

2. The record from the District Court contains the pleadings, court reporter's transcript, and the judgments in all three cases.

   Appellant was sentenced on June 26, 1953, but the judgments were not filed until June 30. On July 9, within the ten day appeal period, appellant filed a motion entitled "Motion to Withdraw Pleas of Guilty." The title was misleading. Appellant asked not merely that his guilty pleas in Nos. 760 and 761 be withdrawn, but, in addition, sought to enter a plea of mental incompetency before and during his trial on No. 759. The numbers of all three cases were written on the face of the motion, which was prepared and filed *pro se.* But the number of the case wherein appellant pleaded not guilty (No. 759) was crossed out. Apparently this was done by the District Court or its clerk under the mistaken impression that the motion applied only to cases numbered 760 and 761 wherein appellant had pleaded guilty. At any rate, the Government has never contend-

ed that appellant either made or acquiesced in this excision.

   When the District Court, on July 24, 1953, denied appellant's motion, the order, of course, bore only the numbers of the two cases wherein appellant pleaded guilty; and, accordingly, our grant of leave to appeal in forma pauperis was likewise limited to these two cases. When appellant thereafter requested this court to amend its order to authorize appeal from District Court orders entered in all three cases on June 26, 1953, the Government specifically withheld any opposition to the proposed amendment. However, still believing that the judgment in No. 759 was not embraced in appellant's motion filed July 9, we adhered to our original position.

3. Review of No. 759 was feasible in these unusual circumstances because on April 8, 1954, we ordered a stenographic transcript of the proceedings to be prepared at Government expense "as a supplemental record" in the two appeals (in cases 760 and 761) then pending.

ited [the District Judge] in chambers for the purpose of discussing the case with him * * *." [4] Appellant was not present. The record does not reveal what took place in chambers. Hence we are not advised whether any representations were made in mitigation of sentence. "[B]ecause of other Court obligations," Mrs. Dwyer did not appear when sentence was imposed in open court later that day.[5] Instead, Mr. Dwyer, her husband and law partner, but not an associate in this case, appeared with appellant. This is the transcript of the entire proceedings:

## "PROCEEDINGS

"Mr. Dwyer: May it please the Court, I understand Mrs. Dwyer has already spoken to Your Honor about this. I can add nothing to it.

"The Court: The Court will sentence the defendant:

In case No. 759–53, to five to fifteen years;

In case No. 760–53, to four to twelve years;

In case No. 761–53, to four to twelve years; all consecutive.

"(Thereupon the instant hearing was concluded.)"

It is therefore plain that the following italicized portions of the judgments and commitments, entered upon printed forms and which appear in the record, are erroneous: (1) " * * * the defendant appeared in person *and by counsel, Jean Dwyer, Esquire*"; and (2) " * * * *the court having asked the defendant whether he has anything to say why judgment should not be pronounced * * *,* defendant is hereby committed * * *." [6]

Appellant was 20 years old when the consecutive sentences aggregating 13 to 39 years were imposed. The indictment upon which he was tried and found guilty involved a robbery of $14.50 and there was no evidence of aggravated violence or the use of a deadly weapon. The other two indictments, to which he pleaded guilty, involved robberies of $30.00 and $56.78, respectively. Appellant urges in this court that he had no prior convictions, only juvenile arrests. The severity of the sentences in the light of these circumstances brings into sharp focus the critical importance of affording appellant an effective opportunity to inform the sentencing court of any and all mitigating circumstances. Since the present record gives no assurance that such an opportunity was afforded, we vacate the sentences and remand to the District Court for resentencing after affording such opportunity.

■ (1) The right to effective assistance of counsel at the sentencing stage of the proceeding is guaranteed by the Constitution.[7] "There is then a real need for counsel. * * * Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendants' past record; and, in short, to appeal to the equity of the Court * * *." [8]

■ With commendable candor, the Government concedes these propositions.[9] But it urges "that the essence of representation of counsel in the sentencing stage was in fact furnished * * *," in that trial counsel, Mrs. Dwyer, had spoken with the judge in chambers.[10] "The conference in chambers," it urges,

4. Affidavit of Mrs. Dwyer filed in this court on September 23, 1954.

5. Ibid.

6. Transcript of Record, pp. 4, 9, 18.

7. McKinney v. United States, 1953, 93 U.S.App.D.C. 222, 208 F.2d 844; Walton v. United States, 1953, 92 U.S.App. D.C. 26, 202 F.2d 18; Thomas v. Hunter, 10 Cir., 1946, 153 F.2d 834; Martin v. United States, 5 Cir., 1950, 182 F.2d 225, 20 A.L.R.2d 1236; Wilfong v. Johnston, 9 Cir., 1946, 156 F.2d 507; see Batson v. United States, 10 Cir., 1943, 137 F.2d 288.

8. Martin v. United States, 5 Cir., 1950, 182 F.2d 225, 227, 20 A.L.R.2d 1236.

9. Brief for the United States, p. 21.

10. Id., at 22.

"can be a setting, even more favorable than the courtroom, for pleading mitigation of sentences. Certainly, such a procedure satisfies the constitutionally derived right to counsel."[11] We cannot agree. There is, of course, no way of knowing that a plea in mitigation was actually made in chambers; but even if one were made, appellant cannot be deemed to have waived his right to have had it made in open court and in his presence.[12] The flaw in the Government's position was eloquently exposed in an English case where a witness had been interrogated by the court in the absence of the defendant. In quashing the conviction, the Lord Chief Justice aptly said:

> "That is a matter which cannot possibly be justified. I am not suggesting for one moment that the justices had any sinister or improper motive in acting as they did. It may be that they sent for this officer in the interests of the accused; it may be that the information which the officer gave was in the interests of the accused. That does not matter. Time and again this court has said that justice must not only be done but must manifestly be seen to be done * * *."[13]

Walton v. United States,[14] upon which the Government solely relies, does not support the proposition that "the essence of representation of counsel in the sentencing stage" is provided by a discussion in the privacy of the judge's chambers without the presence of the defendant. There the accused was afforded full opportunity to present all mitigating circumstances; and such a presentation was in fact made through counsel in open court. Thereafter, just fifteen minutes after sentence was pronounced, the trial judge, in the absence of counsel, corrected an inadvertent error caused by "a deplorable confusion of names." We held counsel's absence at the resentencing to be "merely an inconsequential error, * * *" since immediately prior thereto, counsel, in open court and in appellant's presence, had done all in his power on the appellant's behalf.[15]

■■ The Government does not urge here that Mr. Dwyer's presence at the sentencing proceedings satisfied appellant's right to effective representation by counsel. And no such argument could prevail since the court's duty to protect that right is not satisfied by "token obedience";[16] counsel must not only be competent but must have adequate opportunity to prepare for the assigned task.[17] Conceivably, by intensive preparation, counsel entering the case for the first time at the sentencing stage could make an effective plea in mitigation. But here there is no showing that the substituted counsel had so prepared, or, indeed, had any opportunity to do so; and at the hearing he made no effort to speak on appellant's behalf.[18]

11. Ibid.

12. This right is clearly recognized by the Federal Rules of Criminal Procedure, 18 U.S.C. Rule 32(a) makes the plea in mitigation an integral part of the formal sentencing procedure, stating: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf * * *." Rule 43 requires that "The defendant shall be present at [*inter alia*] * * * the imposition of sentence * * *."

13. Rex v. Justices of Bodmin, [1947] 1 K.B. 321, 325, quoted by Mr. Justice Frankfurter in his concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 172 note 19, 71 S.Ct. 624, 95 L.Ed. 817.

14. 1953, 92 U.S.App.D.C. 26, 202 F.2d 18.

15. 92 U.S.App.D.C. at page 28, 202 F.2d at page 20.

16. Von Moltke v. Gillies, 1948, 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309.

17. Avery v. State of Alabama, 1940, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377; Melanson v. O'Brien, 1 Cir., 1951, 191 F.2d 963, 968; Maye v. Pescor, 8 Cir., 1947, 162 F.2d 641, 643; United States v. Bergamo, 3 Cir., 1946, 154 F.2d 31, 34.

18. Cf. Wilfong v. Johnston, 9 Cir., 1946, 156 F.2d 507, holding that the mere presence in the courtroom as a spectator of an associate trial counsel does not meet the guaranty of the Sixth Amendment.

We recognize that occasionally trial counsel will be prevented by other court business from appearing at the sentencing hearing. In such event it is counsel's duty to preserve his client's constitutional rights by seeking postponement of sentencing or by having substitute counsel present prepared to act on the defendant's behalf. If substitute counsel is present and if the trial judge chooses not to postpone the hearing, he has, we think, the affirmative duty to ascertain whether the substituted counsel is qualified to give effective representation. It is "the solemn duty of the trial judge to make sure that representation is not an empty gesture, but is the fulfillment of the spirit and purpose of the constitutional mandate." [19]

(2) The last sentence of Rule 32(a) states: "Before imposing sentence the court *shall afford the defendant an opportunity* to make a statement in his own behalf and to present any information in mitigation of punishment." [20] We think this provision imposes upon the sentencing court the affirmative duty to ask the accused whether he desires to make a statement. [21]

First, the language of the Rule strongly implies such an obligation. The phrase "shall afford * * * an opportunity" clearly means more than "shall permit," which would have been used had the rule been intended to leave the initiative with the accused rather than with the court. Second, the judgment and commitment form, proposed as Form 25 of Appendix of Forms annexed to the Rules, includes the language "the court having asked the defendant whether he has anything to say why judgment should not be pronounced * * *." While this form is illustrative and not mandatory, [22] nevertheless it clearly reflects the understanding of the drafters that such an inquiry is required. Third, authoritative texts and commentators make clear that the final sentence of Rule 32(a) incorporates into federal criminal practice a broader counterpart of the common-law allocution under which the court addressed a formal inquiry to the accused. [23]

19. Willis v. Hunter, 10 Cir., 1948, 166 F. 2d 721, 722-723.

20. F.R.Crim.P., emphasis supplied.

21. This Rule has never been judicially construed in this jurisdiction. In the only case to raise the present question, Calvaresi v. United States, 10 Cir., 1954, 216 F.2d 891, 901, the Tenth Circuit held that "In the absence of a * * * request [to speak] by competent counsel * * * we cannot say that [defendants] were not afforded an opportunity to be heard before sentence was imposed, had they desired such a hearing." This case was summarily reversed by the Supreme Court (23 U.S.L. Week 3222, March 15, 1955), although, because of the numerous other errors alleged, it is impossible to tell whether the Court agreed or disagreed with the Tenth Circuit on this point. The Sixth Circuit, in Sandroff v. United States, 6 Cir., 1949, 174 F.2d 1014, 1020, held that the informal query "Anything further?" afforded the required opportunity, particularly since defendant's counsel had specifically disclaimed any desire to speak. It is implicit in this holding that a failure to make any inquiry, formal or informal, would not have satisfied the Rule, although, of course, that question was not decided. Cf. United States v. Tannuzzo, 2 Cir., 1949, 174 F.2d 177, certiorari denied 338 U.S. 815, 70 S.Ct. 38, 94 L. Ed. 493, holding that Rule 32(a) does not require the deferment of sentence so defendant can prepare a case for mitigation, so long as defendant is afforded an opportunity to make a statement. United States v. Austin-Bagley Corp., 2 Cir., 1929, 31 F.2d 229, holding that a trial court's failure to ask whether the defendant had anything to say was not prejudicial, was decided prior to promulgation of the rules.

22. Rule 58, F.R.Crim.P. It is noteworthy that the prescribed form was utilized in this case.

23. 12 Cyclopedia of Federal Procedure § 50.16 (3d ed.) states: "Under the Rule, the trial judge is required to afford the defendant an opportunity to make a statement, and the judge should ask the defendant whether he desires to make one." Another author, after describing the common-law *allocutus* which required the judge in capital cases to ask the accused whether there was any legal cause why sentence should not be imposed, states:

Here, it is true, Mr. Dwyer said he had nothing to add to what had already been said in chambers. But we cannot be sure that neither he nor the accused would have spoken up had the court specifically invited a statement. Nor can we assume that, had such a statement been made, it would have been unavailing. It is for these reasons that in most states where allocution is required, either by statute or by common law, the failure to accord it has been held to be a denial of a substantial right requiring a remand for re-sentencing.[24]

The verdict and adjudications of guilt are affirmed; the sentences are vacated. The judgments of conviction entered under Rule 32(b) which contain and rest upon the sentences must be vacated for reentry after resentencing.

Remanded for resentencing.

"The last sentence of Rule 32(a) broadens and generalizes this requirement by imposing on the court the duty to afford the defendant *in all cases* an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." Whitman, Federal Criminal Procedure 235 (1950). (Emphasis supplied.)

The American Law Institute Code of Criminal Procedure provides for an *allocutus* in all cases where the defendant is present when sentence is pronounced

(A.L.I. Code of Criminal Procedure § 389 (1930) ) but only four grounds for not imposing sentence may then be presented (Id. § 391). Professor Orfield comments that Rule 32(a), under which any information in mitigation may be presented, "is of a more general and broader character * * *." Orfield, Criminal Procedure from Arrest to Appeal 540 (1947).

24. See Ball v. United States, 1891, 140 U.S. 118, 131, 11 S.Ct. 761, 766, 35 L. Ed. 377, where the Court, referring to an

---

Illinois decision holding that "the omission to [ask the defendant why he should not be sentenced] was no ground for reversal in any case," commented, "But the great weight of authority is the other way." See also Schwab v. Berggren, 1892, 143 U.S. 442, 447, 12 S.Ct. 525, 36 L.Ed. 218; People v. Nesce, 1911, 201 N.Y. 111, 94 N.E. 655; People v. Craig, 1946, 295 N.Y. 116, 65 N.E.2d 192; State v. Caulder, 1923, 301 Mo. 276, 256 S.W. 1063; State v. Cantrell, Mo.1924, 263 S.W. 177; Brooks v. State, 1937, 234 Ala. 140, 173 So. 869; Silsby v. State, 1928, 119 Ohio St. 314, 164 N.E. 232; People v. Hawthorne, 1944, 63 Cal.App. 2d 262, 146 P.2d 517; Ex parte Carlson, 1922, 176 Wis. 538, 186 N.W. 722.