**William H. BOWMAN, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 3678.**

District of Columbia Court of Appeals.

Argued April 12, 1965.

Decided Aug. 2, 1965.

William J. Garber, Washington, D. C., with whom William A. Bachrach, Washington, D. C., was on the brief, for appellant.

Frank Q. Nebeker, Asst. U. S. Atty., with whom David C. Acheson, U. S. Atty., and Earl J. Silbert and Gerald E. Gilbert, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge:

Appellant and one Ferguson, not a party to this appeal, were convicted of unlawful entry.[1] Neither defendant testified at trial, and it is appellant's contention that the Government's evidence did not warrant his conviction.

The evidence of the Government showed that one afternoon a crowd of about 100 persons was gathered in the concourse of Union Station outside the gate leading to Track 24. Above the gate was a sign stating that only persons holding transportation (having tickets) were permitted

1. D.C.Code 1961, § 22–3102. "Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon, without lawful authority to re- main therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $100 or imprisonment in the jail for not more than six months, or both, in the discretion of the court."

through the gate, and prior to the opening of the gate public announcement to the same effect was made. Appellant and Ferguson were seen standing at the rear of the crowd, but when the gate was opened they were among the first to enter. They made no attempt to go to the train level, but stationed themselves at the top of the escalator leading to the train level and remained there while others passed them and went down the escalator. While so standing, appellant saw a Terminal Company police officer, Lt. Harding, observing him. He went to Harding and inquired if Officer Lanigan was around, saying he wished to obtain Lanigan's permission to take some pictures of this area. Harding noticed that neither appellant nor his companion Ferguson had any photographic equipment, and asked appellant for his ticket. When appellant could produce no ticket, Harding arrested him. After being arrested, appellant stated he and Ferguson had been looking for the Redskin Special, although that train had departed some seventeen minutes before and on a different track.

While Harding was talking with appellant, Ferguson undertook to leave, and began to run when he saw Officer Hoggarty following him. Hoggarty caught Ferguson as he left the Station. Ferguson also had no ticket.

On this appeal, appellant concedes he had no ticket and had no intention of buying one. He also concedes the authority of the Terminal Company to exclude the public generally from certain areas of the Station and to restrict use of such areas to those members of the public who are there to board a train. He further concedes that had Harding ordered him to leave the restricted area his refusal to do so would have been a violation of the statute. But appellant argues that his entry into the restricted area was not a violation of the statute. His position appears to be that there can be no unlawful entry under the statute unless such entry is contrary to a personal warning or instruction not to enter. Because at common law trespass was not a crime unless it was accompanied by or tended to create a breach of the peace, appellant seems to argue that under our statute an unlawful entry may occur only after a personal confrontation with the lawful occupant.

 We do not agree that our statute is a mere attempt to restate the common law of criminal trespass. "Traditionally the American law punishes persons who enter onto the property of another after having been warned by the owner to keep off."[2] Our statute does exactly that. It punishes one who, without lawful authority, enters premises against the will of the lawful occupant. To be against the will of the lawful occupant the entry must be against the expressed will, that is, after warning to keep off. It is not necessary that such warning be verbally expressed; it may be expressed by sign. In this case the Terminal Company expressed its will by sign and by public announcement, and there is no contention that appellant and his companion did not see the sign or hear the announcement or fail to understand its purport.

It is argued that the warning was not absolute, since it was admitted that passengers are often permitted to enter the restricted area without tickets and purchase tickets after boarding the train. This has no relevancy here, as no claim is made that either appellant or Ferguson intended to board a train and then purchase a ticket. It is also suggested that it is not unknown for one to enter the restricted area without a ticket and with no intention of buying one, but merely for the purpose of accompanying a departing passenger or meeting an incoming one; and that such is not considered, and could not be treated, as an unlawful entry. It may well be that one

2. Martin v. City of Struthers, 319 U.S. 141, 147, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943).

who enters the restricted area without a ticket but for a good purpose and with bona fide belief of his right to enter, would not be guilty of an unlawful entry, but such is not the case here.

Affirmed.