**UNITED STATES of America, Appellee,**

v.

**Milford BURKLEY, Appellant.**

**No. 74–1010.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1974.

Decided Feb. 18, 1975.

---

Charles Bruce Baird, Vienna, Va. (Donald S. Lilly, Fairfax, Va., on brief), for appellant.

J. Frederick Sinclair, Asst. U. S. Atty. (David H. Hopkins, U. S. Atty., and Stephen R. Pickard, Asst. U. S. Atty., on brief), for appellee.

Before WINTER and RUSSELL, Circuit Judges, and NORTHROP, District Judge.*

## WINTER, Circuit Judge:

Milford Burkley was found guilty of two charges of willfully and knowingly making a false statement to an agency of the United States, in violation of 18 U.S.C. § 1001. The false statements concerned the value of property owned by him which he recited in two affidavits, filed with the Clerk of the District Court for the Eastern District of Virginia, to secure bonds for the release of certain persons incarcerated while awaiting trial. Burkley was sentenced to concurrent terms of two years on each charge with service of eighteen months suspended upon payment of a fine of $5,000. On appeal, he attacks both the validity of his convictions and his sentences.

### I.

We think Burkley's convictions valid and affirm them. However, we vacate his sentences and remit him for resentencing, because we think that he was denied effective assistance of counsel at that stage of the criminal proceedings.

Burkley obtained the Orange County, Virginia, property described in the affidavits as collateral for a debt when he advanced $3,300 to a certain Deadwyler, a bookmaker sorely in need of funds to pay off bets on a number that was "hit." The evidence conflicted as to whether Burkley had agreed to resell the property to Deadwyler if the loan were repaid and whether Burkley gave other consideration—specifically, cash and payment of Deadwyler's other debts—for a conveyance of the property. In any event, the conveyance transferring record title recited a consideration of $35,000. For *ad valorem* property tax purposes, however, the property was assessed for $3,200. The affidavits, made two and one-half years after Burkley acquired the property, recited that Burkley had purchased the property for $35,000 and

that "the actual market value of said real estate at the present time is $85,-000.00."

At the trial the government presented proof, which was legally sufficient in our view, to permit the district court, sitting nonjury, to find beyond a reasonable doubt that the market value of the property was not as great as $85,000. Burkley's defense was that "to him" the property did have a market value of $85,000, because, in fact, he would have been unwilling to sell it for less than $100,000. Testifying in his own defense, he claimed the deputy clerk of court had told him that he must present an affidavit as to the value of the property he offered as security, that she told him how to get an affidavit, and that he told her "it was worth $100,000 to me, I said, because I am a builder, I do plumbing work, and I am in this big now. . . . " In response to questions by the district judge, Burkley testified that he made his affidavit in the office of a certain Mr. Raby, who was his attorney at the trial but not on this appeal, and that Mr. Raby's secretary, Mrs. Speller, typed the affidavit. Burkley said that he told Mrs. Speller that the property was worth $85,000 "to me," although the qualifying phrase was not included in the affidavit. The transcript shows the following colloquy:

THE COURT: You say his notary or secretary wrote that up?

THE WITNESS: Yes sir, I think she typed that up.

THE COURT: You told her it was worth $85,000?

THE WITNESS: I said *to me* it is worth that.

THE COURT: I see.

THE WITNESS: *To me*, and it is still worth that, your Honor. I haven't taken that back. It is worth that right now *to me*. (Emphasis supplied.)

The parties stipulated that Mrs. Speller prepared the affidavits, and she was not called as a defense witness, even though

---

* Chief Judge, United States District Court for the District of Maryland, sitting by designation.

her office was across the street from the district court. After the record was closed, Raby offered to call her when the district judge evinced interest in what she might have said, but the district judge declined to permit the record to be reopened.

## II.

■ We see no merit in Burkley's attack on the validity of his conviction. The evidence need not be recited in greater detail. It is enough to say that, construed most favorably to the government, the evidence was legally sufficient to permit the district court to conclude beyond a reasonable doubt that Burkley knew the market value of the property was less than $85,000 and that he willfully and knowingly represented to the contrary to the district court in the bail transaction. Such a representation to the judicial branch of government is a violation of 18 U.S.C. § 1001. United States v. Bramblett, 348 U.S. 503, 509, 75 S.Ct. 504, 99 L.Ed. 594 (1955); Morgan v. United States, 114 U.S.App.D.C. 13, 309 F.2d 234, 237 (1962), cert. denied, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963).

■ Nor do we think that Burkley was afforded ineffective representation at his *trial*. This argument proceeds from the premise that because Raby, who represented him at trial, was the lawyer in whose office the affidavit was prepared, there was an inherent conflict of interest in Raby's position as counsel at trial. But the short answer is that *at trial* Burkley made no claim that he had sought advice from Raby about the meaning of "market value" or what value to ascribe to the property. It is true that after conviction he made such a claim, but at trial, Raby, in his opening statement, told the district court that Burkley's defense would be that Burkley thought, when making the affidavits, that he had been asked "what would the property value be *to you*" (emphasis added), and that Burkley thought that he

said "*to me* it was valued $85,000." (Emphasis added.) Burkley testified in his own defense. His testimony, which we have set forth, was consistent with the defense Raby had represented would be advanced. More importantly, Burkley, in answering many questions, freely enlarged his answers beyond the scope of the inquiries put to him, but, nevertheless, he did not even suggest during the trial that he had sought and acted on advice from Raby with regard to the value of the land stated in the affidavit. We do not perceive, therefore, that in representing Burkley at trial Raby could have been acting in conflict with his client's particular defense or overall interests.

■ We do not think that Raby's failure to call his secretary as a defense witness is any evidence that Raby was ineffective as counsel at trial. Even now Burkley makes no representation that Mrs. Speller would corroborate his version of the information he claims he gave her to enable her to prepare the affidavit. The decision not to call her appears to have been deliberate trial strategy based upon either her inability to recollect what Burkley had said, or the likelihood that her testimony would refute his assertions.

## III.

After he was found guilty, Burkley's sentencing was postponed until a presentence report was prepared. The report, when prepared, was obviously not exhibited to counsel prior to the formal sentencing proceedings.

When the clerk called the case for sentencing, Raby began his opening comments in support of mitigation of sentence. He had hardly begun when the district judge interrupted him to say that his client had admitted the offense to the probation officer making the presentence investigation and had said "that you [Raby] told him to make it $85,000." In ensuing discussion, Burkley repeated his accusation in open court, and there

was extensive colloquy between him and the district judge about the accusation, the offenses of which Burkley was convicted, his prior conviction and arrest record, other charges currently pending against him, his right of appeal, and a stay of the sentence imposed on him. In addition to his abortive opening statement, Raby said only that he did not previously know of Burkley's accusation, that the accusation was untrue, and that he could not represent Burkley on appeal. The district judge indicated that he believed Raby's denial. Raby never resumed his attempt to argue in mitigation of punishment for Burkley.

It is manifest that the sentencing from Raby's opening phrases to conclusion was largely an adversary proceeding between Raby and Burkley, although Raby's formal and proper role was to be Burkley's attorney and to afford him all proper assistance of counsel. Because sentencing is a critical stage of a criminal prosecution, Burkley had a right to effective assistance of counsel throughout. Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297, 1300 (1973); Gadsden v. United States, 96 U.S.App.D.C. 162, 223 F.2d 627, 630 (1955). Of course Burkley, in effect, deprived himself of counsel by his own accusation against Raby, thus preventing Raby from further effective representation of Burkley, but we cannot say that this was a waiver of the right to counsel by federal waiver standards. We are therefore constrained to conclude that Burkley was sentenced in the absence of effective assistance of counsel and that his sentence must be vacated and reimposed in a proceeding in which any facts in mitigation of punishment may be freely and fully developed. Since the United States District Court for the Eastern District of Virginia is a multijudge court, we suggest that reimposition of sentence take place before a district judge other than the one before whom the Burkley-Raby conflict arose.

Conviction affirmed; sentence vacated and remanded.