George A. HOCKADAY, Appellant,

v.

UNITED STATES, Appellee.

No. 8567.

District of Columbia Court of Appeals.

Argued Oct. 16, 1975.

Decided June 11, 1976.

four counts, but the trial court vacated the conviction for unlawful entry. Appellant was sentenced to consecutive one-year terms of imprisonment on each of the remaining three offenses, but execution of the sentences was suspended conditioned upon appellant's participation in the Last Renaissance drug addict rehabilitation program.

Appellant raises several issues. Only two merit discussion. Appellant principally argues: (1) that the trial court erred in failing to give meaningful consideration to appellant's in-trial proffer of guilty pleas to two of the four charges against him, and (2) that error occurred when the trial court imposed sentence on appellant in the absence of his counsel. We agree with both contentions.

Melvin M. Feldman, Washington D. C., appointed by this court, for appellant.

Gerald F. Treanor, Jr., Asst. U. S. Atty., Washington D. C. with whom Earl J. Silbert, U. S. Atty. and John A. Terry, Stuart M. Gerson, and Alexia Morrison, Asst. U. S. Attys., Washington D. C., were on the brief, for appellee.

Before YEAGLEY, HARRIS, and MACK, Associate Judges.

HARRIS, Associate Judge:

Appellant was arrested in a ladies' bathroom at the Whitelaw Hotel and charged with unlawful entry, D.C.Code 1973, § 22–3102, possession of the implements of crime, *id.* § 22–3601, and unlawful possession of marijuana and heroin, *id.* § 33–402.[1] A jury found appellant guilty on all

## I

Appellant's trial commenced at 3:20 p. m. on Friday, February 1, 1974. The court disposed of certain preliminary matters, and the case was recessed until the following Monday.[2]

The trial resumed at 11:40 a. m. on Monday morning. A luncheon recess was called at 12:30 p. m. Court convened again at 2:20 p. m. Defense counsel then advised the court of his client's decision to enter a plea of guilty to two of the four charges against him. The following colloquy took place:

> [DEFENSE COUNSEL]: Your Honor, one further thing. My client— There will be a disposition at this time. My client advised me that he is willing to enter a plea at the present time to the count of unlawful entry and also the count of possession of marijuana.

---

1. Appellant was apprehended when a Metropolitan Police Department officer heard a man coughing in a restroom marked "Ladies". When the officer entered, appellant was holding a marijuana cigarette. Another such cigarette and a wet narcotics cooker were found at his feet. A needle and a syringe, half-full of a liquid later identified as containing heroin, were found in appellant's hair.

2. During that first afternoon, the trial court commented several times upon appellant's conduct in the courtroom. Apparently, appellant was continually fidgeting and talking to trial counsel, and the court voiced concern as to appellant's mental health. However, no mental observation was requested or ordered. *But see* note 9, *infra.*

THE COURT: Mr. Hockaday, you may stand.

I'm not so sure I ought to take this plea. Are you sure you want to dispose of it in this courtroom, Mr. [Defense Counsel]?

[DEFENSE COUNSEL]: Can I confer with my client to see?

THE COURT: Yes, sir.

Mr. [Defense Counsel], I'm not going to even ask the Government if they agree. This trial has been too much trouble. I'd rather it proceed. Be seated.[3]

■ The trial resumed, and appellant was convicted on all four counts. The trial court's only further reference to the proffered plea came after the jury had rendered its verdicts. The court then addressed appellant as follows:

THE COURT: * * * The Court would not take your plea of guilty after trial had commenced for you protection, for the protection of your lawyer and the protection of the judge. Not that I feel I need any protection. But because of the way in which this trial had commenced and the tangents it was apparently taking, the Court thought it best to let the jury have the whole case and, finally, the last word.

It is true that the decison whether to accept or reject a guilty plea is lodged in the discretion of the trial court. *Griffin v. United States*, 132 U.S.App.D.C. 108, 110, 405 F.2d 1378, 1380 (1968); *McCoy v. United States*, 124 U.S.App.D.C. 177, 178, 363 F.2d 306, 307 (1966). Nonetheless, the exercise of that discretion is circumscribed by the nature of the trial judge's role in the plea bargaining process.[4] We agree that "the [trial] court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (1973). Thus, where, as here, a disposition has been agreed upon by both the defendant and the government, the trial court must identify good reasons for a departure from following that course. If no proper cause exists to vitiate the plea, the trial court is obliged to accept it. *See United States v. Ammidown, supra; United States v. Gaskins*, 158 U.S.App.D.C. 267, 485 F.2d 1046 (1973); *Griffin v. United States, supra; McCoy v. United States, supra; cf. United States v. Canty*, 422 F.2d 358, 359 (4th Cir. 1970), *cert. denied*, 409 U.S. 987, 93 S.Ct. 343, 34 L.Ed.2d 254 (1972).

■ ■ In light of these well-established limitations on the exercise of the trial court's discretion to reject a bargained plea, the blanket refusal to hear from ei-

3. While our dissenting colleague characterizes defense counsel's proffer of a bargained disposition as merely a "tentative suggestion", the record readily reflects its true nature. As the quoted exchange demonstrates, trial counsel flatly stated his client's assent to the plea. The trial court challenged him, but before counsel could confer again with his client, the trial court terminated the inquiry and rejected the plea. Fairly construed, the record reveals that it was the trial court's abrupt termination of the discussion which deprived appellant of his right to be heard, rather than any true hesitation on the part of the defendant or his counsel. On this appeal, the government readily acknowledges that a plea agreement had been negotiated.

4. Among the tasks assigned to the trial court when it is faced with a proffered guilty plea is assuring itself of the existence of a factual basis for the plea and of its knowing and voluntary nature. This duty is set forth in Super.Ct.Cr.R. 11. This responsibility cannot be met properly in the absence of any effort to probe into the tendered plea bargain. Our dissenting colleague takes the position that the trial court's rejection of the plea was occasioned by a concern for fairness to the defense. Appellant himself disputes that such was the case, and we agree. More importantly, it is indisputable that the trial court has provided us with no basis upon which we can satisfy ourselves that its action was the result of an informed and reasoned exercise of discretion.

ther side concerning the proffered plea constituted an abuse of discretion.[5] The judge's apparent belief that the trial had been "too much trouble" (although it had consumed only two hours and 15 minutes of court time to that point) presents an inadequate justification for the perfunctory denial of the prosecutor's prerogative to negotiate a plea bargain and the defendant's right to be heard thereon.[6]

## II

Some months after trial, appellant's case came up for sentencing. The sentencing hearing was conducted in two sessions, one in the morning and one in the afternoon of the same day. At the morning session, the trial court afforded both appellant and his counsel an opportunity to speak in mitigation of sentence. The judge then explained that he would offer appellant a choice between imprisonment and treatment for narcotics addiction, but nothing was said as to the length of any period of incarceration. When appellant expressed a preference for treatment, the court passed the case to allow an official from the Last Renaissance program to interview appellant and decide whether he was suitable for the program. The case was recessed at 10:40 a. m.

Consideration of the case resumed at 3:25 p. m. Appellant was present, but his attorney was not.[7] A representative from Last Renaissance then indicated to the court that it would accept appellant into that program. The trial court immediately imposed consecutive sentences of one year on each of the three counts, but suspended execution thereof provided appellant abided by the rules and regulations of the Last Renaissance program. The court then addressed appellant:

THE COURT: * * * Do you understand, sir?

MR. HOCKADAY: Up to a point. I didn't hear you—you know—three years, but I didn't—

THE COURT: See, you are more interested in the time than you are in getting cured. I hope when you walk out of here you remember that.

---

5. We note Canon 3A(4) of the Code of Judicial Conduct, the first sentence of which provides:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law.

6. It may not properly be concluded that the trial court's failure to consider the proffered guilty pleas was inconsequential because of the fact that execution of the sentences was suspended conditionally. By proceeding with trial, appellant was exposed to a greater possible punishment than that which could have resulted from his guilty pleas. Unlawful entry carries a maximum term of imprisonment of six months. In contrast, a conviction for possession of the implements of crime, where, as here, the defendant has a prior felony conviction, can result in from one to ten years in prison. Each narcotics possession charge was punishable by a maximum term of imprisonment of one year. Therefore, maximum consecutive prison sentences on convictions for unlawful entry and possession of marijuana, appellant's proffered pleas, could have totalled only one and one-half years, as compared to the three years actually imposed.

7. From the face of the sentencing hearing transcript, the absence of defense counsel could not be definitely ascertained, although it was apparent that no attempt was made to address him or enlist his participation. Therefore, we previously remanded the case to the trial court for the sole purpose of determining whether appellant was represented by counsel when sentence was imposed. On remand, the trial court found that sentence had been imposed in the absence of counsel. So finding, the trial judge proceeded to vacate his original sentences on the ground that, in the absence of counsel, they were invalid. However, the trial court was without jurisdiction to vacate the sentences, our remand order having called only for a factfinding on the issue of counsel's presence. *Cf. King v. United States,* D.C.App., 271 A.2d 556 (1970); *Smith v. United States,* 109 U.S. App.D.C. 28, 283 F.2d 607 (1960); *Smith v. Pollin,* 90 U.S.App.D.C. 178, 194 F.2d 349 (1952). In any event, the trial court's evaluation of the effect of the absence of counsel at sentencing comports with our own.

MR. HOCKADAY: I am saying I didn't hear you—

THE COURT: If that is true, I will see you again. I said one year on each count to run consecutively. If you mean what you say about being cured, you can forget that. Don't forget it because if you miss it, you have got three years. The alternative gives you a cure or three years.

 The government essentially concedes error on this issue. The right to effective assistance of counsel at the sentencing stage of a criminal proceeding is secured by the Constitution. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed. 2d 336 (1967); *United States v. Johnson*, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973); *Gadsden v. United States*, 96 U. S.App.D.C. 162, 165, 223 F.2d 627, 630 (1955). In the face of a constitutional error, reversal is required unless it is shown that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

 Applying this stringent standard, we cannot say that the absence of trial counsel at the actual moment when the sentences were imposed was harmless to appellant beyond a reasonable doubt. The fact that counsel had been present earlier in the day when alternative dispositions were discussed is not sufficient. To carve out such an exception to the constitutionally guaranteed right of assistance of counsel would improperly open the door to

a case-by-case evaluation of the necessity of counsel's presence. The right is too deeply—and properly—embedded in our jurisprudence to sanction such an approach. We share the belief expressed in *Gadsden v. United States, supra,* that "justice must not only be done but must manifestly be seen to be done . . . ." [8]

Our conclusion that appellant's lack of assistance at the actual sentencing was not harmless is further supported by the circumstances of this case. The record reveals appellant's confusion over the meaning of the sentence, and, given the interlude between the morning and afternoon sessions, it is possible that appellant and his counsel could have reached a further understanding on the sentencing alternatives in the interim. In addition, the trial court had expressed concern regarding appellant's mental stability.[9] In light of these facts, we are unable to conclude that appellant's final confrontation with the court for the imposition of sentence was so devoid of the dangers which the right to counsel seeks to prevent that the absence of such assistance may be held to have been harmless beyond a reasonable doubt.

 In order to correct these errors, on remand the trial court should determine whether appellant wishes to retender his original two pleas of guilty. If he elects to do so, and, after the relevant inquiries are made, the trial court accepts the pleas, appellant should be resentenced in the presence of counsel on the unlawful entry and possession of marijuana convictions.[10] On

---

8. 96 U.S.App.D.C. at 166, 223 F.2d at 631, quoting *Rex v. Justices of Bodmin*, [1947] 1 K.B. 321, 325.

9. Subsequent to trial but prior to sentencing, the trial court ordered, at defense counsel's request, an examination of appellant by a forensic psychiatrist to determine his competency to stand trial. The results of that report indicated appellant's competency, and the trial court entered a finding of competency nunc pro tunc as of the date of trial.

10. We think it would be permissible to accept a guilty plea to the unlawful entry charge notwithstanding the trial court's action in setting aside the jury's verdict of guilty on that count. Explaining that ruling, the trial judge stated:

THE COURT: * * * The reason [I am setting aside the unlawful entry conviction] is there is no law that says one cannot be in the women's lavatory. In this case, the accused's testimony was that an agent [of the hotel] said he could be there.

the other hand, if, as was suggested by appellant's counsel at oral argument, appellant no longer wishes to tender guilty pleas to unlawful entry and possession of marijuana, the trial court should resentence in the presence of counsel on what would then be appellant's three valid convictions, for they otherwise are affirmed.

We are aware of the fact that appellant also is serving a sentence of six-to-20 years on a 1973 conviction of murder. However, we conclude that remand and resentencing are mandated, notwithstanding the fact that the actual consequences thereof may prove to be minimal.

*So ordered.*

MACK, Associate Judge (dissenting in part and concurring in part):

I disagree with the conclusion that the trial court abused its discretion with regard to its treatment of a purported "proffered" plea. However my grave concern is with the way in which the majority gratuitously attempts to circumscribe the role of a trial judge in the plea bargaining process. Citing a case with facts totally inapposite to those of the instant case,[1] the majority concludes that "the [trial] court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." This pronouncement, stated as a general proposition, is a misstatement of the law, posing the potential for a dangerous intrusion on the judicial function. I do not see how the facts of this case warrant a consideration of prosecutorial discretion—not to mention a remand for the exercise of a prerogative which the prosecutor does not now desire.[2]

It is hardly necessary to repeat here that a criminal defendant has no absolute right to have a guilty plea accepted and that a trial court may reject a plea in the exercise of sound discretion. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Lynch v. Overholser*, 369 U.S. 705, 719, 82 S.Ct. 1063, 8 L. Ed.2d 211 (1962); *United States v. Gaskins*, 158 U.S.App.D.C. 267, 485 F.2d 1046 (1973); Super.Ct.Cr.R. 11. Such discretion "is to be exercised in relation to the problem as it is presented, which is usually . . . a composite of factors." *Griffin v. United States*, 132 U.S.App.D.C. 108, 110, 405 F.2d 1378, 1380 (1968). The composite of factors here supports the trial court's exercise of discretion.

---

It is enough to create a reasonable doubt.
The trial court thus voided the unlawful entry conviction based on an incorrect premise. While there may be no law specifically proscribing a man's presence in a ladies' bathroom, the unlawful entry statute forbids an individual to enter premises or parts of premises against the will of the person lawfully in charge. It is fair to assume that a sign on a door marked "Ladies" denies the right to enter to all those not fitting that description and that it was the management's intent to so limit access. The situation is analogous to that involving a door marked "Employees only" in an otherwise public building. *Cf. Bond v. United States*, D.C.App., 233 A.2d 506 (1967); *Bowman v. United States*, D.C. App., 212 A.2d 610 (1965). The mere fact that appellant testified that he was given permission to use the ladies' bathroom does not by itself create a reasonable doubt. The jury obviously did not credit his version, and it very likely raised no doubt in the minds of the jurors.

We note that absent a remand for a reconsideration of the proffered guilty pleas, we would be without authority to affect the trial court's nullification of the jury's conviction of appellant for unlawful entry. The government, of course, has no right to challenge the trial court's action. D.C.Code 1973, § 23–104. Our purpose in faulting what was done is to explain why there is no impediment to the remand procedure which is intended to permit correction of the trial court's mid-trial failure to give proper consideration to appellant's tendered pleas.

1. *See United States v. Ammidown*, 162 U.S. App.D.C. 28, 497 F.2d 615 (1973), discussed at p. 152, *infra.*

2. The government argues in this court that the "record adequately demonstrates that the trial court did not abuse its discretion in refusing to accept appellant's plea in the midst of the trial."

On the second day of trial, the court without objection from either the defense or the prosecution, refused to pursue a tentative suggestion on the part of defense counsel that disposition by plea was desired. The trial court's action must be considered in light of what actually transpired at trial and not solely with respect to the court's oblique reference to "trouble." The record shows that the court from the outset of trial had been gravely concerned with the administration of a fair trial because of several factors—not the least of which had been differences between the defendant and his counsel. These differences manifested themselves when the defendant requested the presence of a witness whom counsel had not subpoenaed, when he requested that counsel be relieved, and when counsel was unable at one point to locate his client. Counsel, even at the time of proffering the suggestion of a plea, was not sure that he or his client desired the disposition.

On this record and in the absence of objection from the defense or the government, it seems clear that the trial court did not abuse its discretion in refusing to pursue the matter further. The court was acting in an area where it had primary responsibility, and in furtherance of the basic intent of Rule 11—the protection of the defendant. *See United States v. Gaskin, supra,* 158 U.S.App.D.C. at 270, 485 F.2d at 1049. There was not the slightest suggestion at trial, and there is no suggestion in this court, that the government had an interest in disposition of the case by plea that would have required the court, in the exercise of its discretion, to have considered the component of fairness to the prosecution.

For this reason, the case of *United States v. Ammidown,* 162 U.S.App.D.C. 28, 497 F.2d 615 (1973), relied upon by the majority for its pronouncement, is inapposite. That case arose under circumstances where the trial court and the United States Attorney differed as to how the interests of the prosecution would best be served. At issue there was whether a bargaining agreement laboriously worked out by the prosecutor because of the need to bring another felon to justice, could be rejected by the court solely because of its conclusion that the defendant should receive the greater punishment. This required consideration, *inter alia,* of the respective roles of the court and the prosecutor in dismissals pursuant to Federal Rule 48(a).[3] In setting standards for the harmonization of such roles, Judge Leventhal, speaking for the appellate court, specifically noted that he was "passing any discussion of fairness to the defense, since it is not directly involved in the case at bar . . .." Id. at 35, 497 F.2d at 622.

In the instant case, the trial court told the appellant that because of the circumstances involving the commencement and direction of trial, the plea had been rejected for appellant's protection. While expressed belatedly, it is confirmation of what appears apparent from the record—that there was a sound and reasoned exercise of discretion made in fairness to the defense. I see no reason to remand this case, over the opposition of the government, for reconsideration of a proffered guilty plea by a reluctant appellant.[4]

3. Fed.R.Crim.P. 48(a) provides that:
The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

4. This court has been informed by counsel that appellant, who is now serving a sentence for murder, has indicated that he would not accept a plea bargain in this case upon remand.
Conviction on one of the two counts to which appellant would have entered the plea—the unlawful entry count—was vacated by the trial judge. I question that it would be "permissible" now to accept a guilty plea to this charge.

As to the remaining issue, because I am persuaded that we should be loath to carve out exceptions to the right of representation by counsel, I concur in the holding that this case must be remanded for sentencing in the presence of counsel.[5]

5. I note that the availability of programs for the treatment and rehabilitation of narcotic addicts has necessitated bifurcated sentencing proceedings to permit the determination of a defendant's eligibility for such programs. Thus there is authority that the initial hearing constitutes the "imposition of sentence" and that the defendant may waive even his own presence at the second stage where he has been heard initially, requests treatment, and does not challenge the bargain made with the court nor the findings of the agency with regard to such treatment. *United States v. Curtis,* 523 F.2d 1134 (D.C.Cir.1975). That case is distinguishable, however, as arising under 18 U.S.C. § 4251 *et seq.* (1970).