**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                          No. 96-4845

STEVEN J. KEY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CR-95-195)

Argued: September 25, 1998

Decided: October 29, 1998

Before NIEMEYER and WILLIAMS, Circuit Judges, and
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert F. Cohen, Jr., COHEN, ABATE & COHEN, L.C.,
Fairmont, West Virginia, for Appellant. Philip Judson Combs, Assis-
tant United States Attorney, Charleston, West Virginia, for Appellee.
**ON BRIEF:** Natalie J. Sal, COHEN, ABATE & COHEN, L.C., Fair-
mont, West Virginia, for Appellant. Rebecca A. Betts, United States
Attorney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Steven Key pleaded guilty to being a felon in possession of a fire-arm in violation of 18 U.S.C.A. § 922(g) (West Supp. 1998). On appeal, Key challenges only his sentence. Key specifically contends that the district court erred (1) in increasing his base offense level by four levels for using a firearm in connection with another felony offense, and (2) in refusing to allow standby counsel to resume repre-sentation at the sentencing hearing. Finding no error, we affirm.

I.

On May 7, 1995, Key became involved in an argument with Mark Adkins while drinking beer at the Pioneer Inn. The argument led to a fight and, ultimately, to Key's ejectment from the bar. Some time thereafter, Key returned to the Pioneer Inn with a shotgun. During his search for Adkins, Key threatened the bar's patrons by pointing the shotgun at them. The owner of the Pioneer Inn reported the distur-bance to the Nicholas County Sheriff's Department.

While Deputy David Moore was en route to the Pioneer Inn, he was advised by dispatch that Key had left the bar in a red Mercury Cougar. Soon thereafter, Deputy Moore observed Key driving the Cougar south on Route 41. Eventually, Deputy Moore followed Key into a parking lot. At that time, Deputy Moore shined his spotlight into the vehicle and saw what appeared to be the barrel of a shotgun.

Deputy Moore ordered Key to exit the vehicle. When Key attempted to drive out of the parking lot, Deputy Moore pointed his service revolver at Key and again ordered him to exit the vehicle. Although Key stopped the car, he remained in the vehicle. As a result, Deputy Moore was forced to physically remove Key from the car. Once Key was placed on the ground and handcuffed, the shotgun was

2

removed from the vehicle. One unspent shell was discovered in the chamber of the shotgun, two unspent shells were found in Key's right front pants pocket, and four unspent shells were found in Key's left front pants pocket. Deputy Moore then transported Key to the Nicholas County Jail. Later, Key was charged in state court with driving under the influence of alcohol (DUI), see W. Va. Code § 17C-5-2 (1996), and seven counts of wanton endangerment involving a firearm, see W. Va. Code § 61-7-12 (1997).

On December 6, 1995, a federal grand jury indicted Key on one count of being a felon in possession of a firearm in violation of 18 U.S.C.A. § 922(g) (West Supp. 1998). Prior to trial, Key, through counsel and acting pro se, filed numerous pretrial motions. Of particular importance here, Key moved to dismiss his attorney, Hunt L. Charach, on March 20, 1996. The district court denied the motion. On March 26, 1996, the day his trial was scheduled to begin, Key pleaded guilty.[1]

On May 13, 1996, Key, acting pro se, filed a petition for a writ of mandamus, ordering the district court to dismiss Mr. Charach as his attorney at the sentencing hearing. Key's writ of mandamus was forwarded to this Court for consideration and his sentencing hearing was stayed. While his case was stayed, Key continued to file various pro se motions -- including a motion to withdraw his guilty plea -- with the district court. The majority of those motions were placed under seal to be addressed by the district court after this Court ruled on the writ of mandamus.

On September 26, 1996, this Court dismissed Key's petition for a writ of mandamus pursuant to his motion of voluntary dismissal. As a consequence, the district court directed Mr. Charach to resume active participation as Key's counsel. In addition, the district court lifted the stay that it had previously ordered and set the sentencing hearing for October 23, 1996.

_____

[1] Key pleaded guilty to the single count in the federal indictment in exchange for the dismissal of the DUI count and six of the seven counts of wanton endangerment involving a firearm pending against him in the Circuit Court of Nicholas County.

3

On October 8, 1996, Mr. Charach moved to withdraw all of the pro se motions filed by Key while Key's petition for a writ of mandamus was pending before this Court. Key, however, objected to his counsel's motion and once again requested permission to proceed pro se. After a hearing on the matter, the district court allowed Key to proceed pro se. Although the district court did order Mr. Charach to participate as "standby counsel," the district court expressly informed Key that standby counsel was not to act as his assistant. The district court then set October 29, 1996, as the date for both Key's sentencing and the resolution of his pro se motions.

On October 29, 1996, the district court denied all of Key's pro se motions, including his motion to withdraw his guilty plea. The district court then sentenced Key pursuant to the firearms guideline. See U.S. Sentencing Guidelines Manual § 2K2.1 (1995). Due to his prior conviction for a crime of violence, the district court set Key's base offense level at twenty. See U.S.S.G. § 2K2.1(a)(4)(A). Because the district court found that Key used the shotgun in connection with another felony offense, it increased his base offense level an additional four levels. See U.S.S.G. § 2K2.1(b)(5). With an adjusted base offense level of 24 and a criminal history category of VI, Key's guideline range was 100-125 months. The district court sentenced Key to a 120 month term of imprisonment.

After Key was sentenced, he argued, for the first time, that he had not received the revised presentence report prior to sentencing. Because the district court could not conclusively establish whether Key had received the revised presentence report, it agreed to continue sentencing until November 8, 1996. In so doing, the district court specifically informed Key that he was required to raise all of his objections to the presentence report by November 5, 1996. Key indicated that he understood the deadline.

Prior to November 5, 1996, Key filed several objections to the presentence report. At no point prior to the sentencing hearing on November 8, 1996, did Key ask either standby counsel for assistance or the district court to allow him to cease representing himself. Once the sentencing hearing began, however, Key informed the district court that he was nervous and wanted to turn his defense back over to Mr. Charach. Mr. Charach informed the district court that he had

4

had no prior notice of Key's intent to cease his pro se representation. Because Key simply wanted Mr. Charach to argue Key's own pro se objections, the district court denied Key's request. The district court then overruled the majority of Key's objections to the presentence report and once again sentenced Key to 120 months imprisonment.**2**

On appeal, Key contends that the district court erred (1) in increasing his offense level by four levels for using a firearm in connection with another felony offense, and (2) in refusing to allow standby counsel to resume representation at the sentencing hearing. We address Key's arguments in turn.

II.

The district court sentenced Key under U.S.S.G.§ 2K2.1. A four level enhancement under U.S.S.G. § 2K2.1(b)(5) is appropriate when "the defendant used or possessed any firearm . . . in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5). Subsection (b)(5) was added to the Guidelines in 1991 to "reflect increased concern about firearms, crimes of violence, and drug offenses." United States v. Condren, 18 F.3d 1190, 1198 (5th Cir. 1994) (noting that "the unlawful use or possession of firearms represents an ever increasing assault on public safety"). Here, the district court specifically found that Key used the shotgun in connection with the West Virginia felony offense of wanton endangerment involving a firearm. Cf. United States v. Nale, 101 F.3d 1000, 1003-04 (4th Cir. 1996) (identifying what is necessary to sustain a finding that a defendant used or possessed a firearm in connection with another offense). As a result, the district court increased Key's base offense level by four points.

On appeal, Key claims that wanton endangerment involving a firearm cannot be "another felony offense" within the meaning of § 2K2.1(b)(5).**3** In particular, Key cites Application Note 18 to

_____

**2** The objections sustained by the district court had no substantive effect on Key's sentence.
**3** Although Key objected to the four level increase pursuant to U.S.S.G. § 2K2.1(b)(5), he did so on the grounds that he did not commit the West Virginia felony offense of wanton endangerment involving a firearm.

5

§ 2K2.1(b)(5), which states: "As used in subsections (b)(5) . . . `another felony offense' and `another offense' refer to offenses other than explosives or firearms possession or trafficking offenses." Thus, according to Application Note 18, a district court should not add a four point enhancement under § 2K2.1(b)(5) if the other felony offense is a firearms possession offense.

The other felony offense here is wanton endangerment involving a firearm. If that offense is a firearms possession offense, the district court erred in giving Key the four level enhancement. Whether wanton endangerment involving a firearm is a firearms possession offense is a legal question subject to de novo review. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996).

West Virginia defines the crime of wanton endangerment involving a firearm as follows:

> Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony.

W. Va. Code § 61-7-12 (1997). Thus, a violation of § 61-7-12 involves two elements: (1) a person wantonly performs an act with a firearm; (2) which creates a substantial risk of death or serious bodily injury. Based on the language of the statute, we have little difficulty concluding that § 61-7-12 is not a "firearms possession offense." Indeed, the mere possession of a deadly weapon would not of itself implicate § 61-7-12.

Wanton endangerment involving a firearm simply does not criminalize the possession of a firearm. Instead, the statute criminalizes the use of a firearm in a way that creates the "substantial risk of death or serious bodily injury." It is indisputable that Key used, and not merely

_____

Key did not argue, as he does on appeal, that even if he had violated the statute, wanton endangerment involving a firearm cannot be "another felony offense" within the meaning of § 2K2.1(b)(5). As a result, our review is for plain error. See United States v. Olano, 507 U.S. 725, 731-32 (1993).

6

possessed (as by carrying concealed in his pocket), a deadly weapon. Cf. United States v. Kuban, 94 F.3d 971, 975-76 (5th Cir. 1996) (holding that "aggravated assault with a deadly weapon" was not a firearms possession offense because it required the"use" of a firearm). Therefore, the district court properly increased Key's base offense level by four points pursuant to § 2K2.1(b)(5).

III.

Next, Key contends that the district court erred in refusing to allow Mr. Charach to resume representation at the sentencing hearing. In particular, Key argues that he had a Sixth Amendment right to counsel at every critical stage of his criminal proceeding, including sentencing. Thus, although he had elected to proceed pro se, Key argues on appeal that he had a right to re-assert his right to counsel. We disagree.

Although a defendant has a Sixth Amendment right to counsel at sentencing, see United States v. Burkley, 511 F.2d 47, 51 (4th Cir. 1975), a defendant may waive his constitutional right to counsel and proceed pro se, see Faretta v. California, 422 U.S. 806, 834 (1975). Once a defendant exercises his right to proceed pro se, however, it is within the discretion of the district court to determine whether the defendant is entitled to withdraw his request and receive substitute counsel. See United States v. Corporan-Cuevas , 35 F.3d 953, 956 (4th Cir. 1994) (noting that the denial of a motion for substitute counsel is reviewed for abuse of discretion); United States v. Hanley, 974 F.2d 14, 16-17 (4th Cir. 1992) (same); see also United States v. Tolliver, 937 F.2d 1183, 1187-88 (7th Cir. 1991); United States v. Reddeck, 22 F.3d 1504, 1510-11 (10th Cir. 1994). This is particularly true when, as here, the defendant's motion is untimely. See United States v. Merchant, 992 F.2d 1091, 1095 (10th Cir. 1993).

During the course of the underlying proceedings, Key made numerous requests to proceed pro se. For example, on March 20, 1996, and again on May 13, 1996, Key filed motions with the district court seeking permission to represent himself. In October 1996, Key once again requested permission to proceed pro se. As a result of this request, the district court scheduled a hearing on the matter. During that hearing, the district court strongly advised Key that he would be better served

7

to proceed with counsel. Similarly, Mr. Charach urged Key not to proceed pro se. Despite those warnings, Key stated his desire to proceed pro se at his sentencing.

Pursuant to his wish, the district court allowed Key to proceed pro se. Although the district court ordered Mr. Charach to participate as "standby counsel," the district court expressly informed Key that standby counsel was not to act as his assistant:

> Remember, now, if you do this thing, if I allow you to do it, you are on your own. . . . You can't ask Mr. Charach. You're on your own.

(J.A. at 301.)

At Key's first sentencing hearing, the district court specifically informed Key that he was required to raise all of his objections to the presentence report by November 5, 1996. Key acknowledged that he understood the deadline. Prior to November 5, 1996, Key filed several objections to the presentence report. In fact, it was not until November 8, 1996, at the sentencing hearing itself, that Key informed the district court (and Mr. Charach) that he was nervous and wanted to turn his defense back over to Mr. Charach.

Under these circumstances, it was not an abuse of discretion for the district court to refuse Key's request to proceed with standby counsel. First, Key repeatedly asked for leave to proceed pro se. In fact, Key took the extraordinary (but unsuccessful) step of petitioning this Court for a writ of mandamus ordering the district court to allow him to represent himself. Second, Key's request was untimely. Key sought leave for standby counsel to take over representation during the sentencing hearing with no prior notice to either the district court or standby counsel. Because the deadline for filing objections to the presentence report had passed three days prior to Key getting cold feet, there was no substantive work for Mr. Charach to do. Third, the district court properly advised Key about the pitfalls of proceeding pro se, and Key does not contend that his waiver of his Sixth Amendment right to counsel was in any way defective. Finally, Key only wanted standby counsel to argue his own pro se objections. Because the district court had already considered the legal merits of Key's pro se

8

objections and was prepared to rule upon them, there was simply nothing Mr. Charach could have done to change the outcome.

IV.

For the foregoing reasons, Key's sentence is affirmed.

AFFIRMED

9